UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-24590-CIV-KING

HARTFORD ACCIDENT AND INDEMNITY
COMPANY, a foreign corporation, as equitable
subrogee and real party in interest on behalf of
Miller & Solomon General Contractors, Inc.,

    Plaintiff,

v.

CRUM & FORSTER SPECIALTY INSURANCE
COMPANY, a foreign corporation,

    Defendant.
_____/

HARTFORD ACCIDENT AND INDEMNITY
COMPANY, a foreign corporation, as equitable
subrogee and real party in interest on behalf of
Miller & Solomon General Contractors, Inc.,

    Plaintiff,

v.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, a foreign corporation,

    Defendant.
_____/

## FINAL SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon Defendant Westchester Surplus Lines Insurance Company's ("Westchester") Motion for Summary Judgment (DE #113),

filed on February 24, 2012,[1] and Plaintiff Hartford Accident and Indemnity Company's ("Hartford") Motion for Summary Judgment (DE #125), filed February 24, 2012.[2] The Court is fully briefed and this matter is therefore ripe for determination. The Court also proceeds with the benefit of oral argument on the parties' cross motions for summary judgment, held in open court on April 19, 2012. After careful consideration of the evidence on record and for the reasons detailed below, the Court finds that summary judgment should be granted in favor of Defendant Westchester and against Plaintiff Hartford.

I.  **Factual Background**

The record before the Court reflects the following undisputed facts. The above-styled action was brought as a suit for declaratory action or, in the alternative, a breach of contract. Hartford seeks to recoup attorney costs and fees incurred in the defense of Miller & Solomon General Contractors, Inc. ("Miller & Solomon") in a separate lawsuit relating to the construction of a condominium building known as the Ocean Grande Beach and Marina Condominium in Hillsboro Beach, Florida. The various claims by subcontractors (and others) in the separate underlying case were settled.

---

[1] On March 9, 2012, Hartford filed its Response (DE #151). On March 19, 2012, Westchester filed its Reply (DE #169).

[2] On March 12, 2012, Westchester filed its Response (DE #155). On March 20, 2012, Hartford filed its Reply (DE #175).

Hartford, in this case, seek to recover from Westchester the sum of $923,172.50 which it allegedly spent to defend and protect the interests of Miller & Solomon in the underlying lawsuit. (DE #116-1, at 1–6). This amount is further broken down as follows: (1) $762,753.23 in costs and fees incurred by the law firm of Carlton Fields who was hired to represent Hartford and Miller & Solomon; (2) $93,271.29 in expert consulting services provided by Construction Support Services, Inc.; and (3) $67,147.98 in expert consulting services provided by Miami Curtain Wall. *Id.* at 5.

On or about December 22, 2000, Hartford issued Performance Bond No. 21BCSAE8116 to Hillsboro Mile Condominiums, LLC ("Hillsboro Mile") to guarantee the work of Miller & Solomon under a contract for the construction of the Ocean Grande Beach and Marina Condominium. The Performance Bond states in part that "The Contractor [Miller & Solomon] and the Surety [Hartford], jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to [Hillsboro Mile] for the performance of the Construction Contract, which is incorporated herein by reference." (DE #112-1, at 4). The bond does not contain language imposing a duty to defend upon Hartford. (DE #112, at ¶5; DE #150, at ¶20).

Westchester issued Commercial General Liability Policy No. GLW-777923-0/000 to Miller & Solomon as the named insured for the period of December 31, 2003 to May 13, 2005 (the "policy"). The policy requires Westchester to defend Miller & Solomon against any "suit" seeking covered damages as defined by the policy. (DE #112, at ¶3;

DE #150, at ¶3). On July 21, 2006, Hartford's chosen counsel for Miller & Solomon, Carlton Fields, wrote to Westchester and other insurers to tender the defense of several lawsuits to the insurers, and enclosed copies of the pleadings in those lawsuits. The same letter also recited:

> "In addition to the above litigation, Miller & Solomon has received pre litigation claims from the developer and condominium association concerning a project known as Ocean Grande Beach and Marina Condominium, Hillsboro Beach, Florida. We enclose copies of the reports of the Condominium Association's experts and correspondence from counsel for the Association and the developer for this project concerning their claims of allegedly defective work by Miller & Solomon and its subcontractors. . . . We have had considerable discussions with the claimants on the Ocean Grande Project and Hartford has conducted some remedial warranty work."

(DE #112, at ¶13; DE #150, at ¶13).

At the time of the July 21, 2006 letter and thereafter, Hartford knew Miller & Solomon was insolvent. (DE #112, at ¶14; DE #150, at ¶14). On August 28, 2006, Westchester acknowledged the July 21, 2006 letter and reserved its rights, but did not agree in that letter to accept the defense of any lawsuit or pre-suit claim. (DE #112, at ¶15; DE #150, at ¶15). As a lawsuit had not been filed yet, no pleadings regarding the Ocean Grande Project were enclosed with the July 21, 2006 letter.

On or about October 3, 2006, the Ocean Grande Beach & Marina Condominium Association filed a complaint against a number of defendants, including Hartford and Miller & Solomon, alleging defects and deficiencies in the project (the "Ocean Grande

action"). (DE #112, at ¶16; DE #150 at ¶16). Hartford retained counsel to defend itself and Miller & Solomon in the lawsuit. (DE #112, at ¶21; DE #150, at ¶21).

The counsel retained by Hartford to defend Miller & Solomon, the law firm of Carlton Fields, corresponded further with Westchester concerning the Ocean Grande action. Specifically, eight letters were exchanged between Carlton Fields and Westchester over the next three years: 1) a letter dated December 5, 2006 (acknowledging Westchester's August 28, 2006 letter); 2) a letter dated December 14, 2006 (regarding expert reports, but not demanding a defense or enclosing a copy of the complaint); 3) a letter dated December 19, 2006 (letter from Westchester's coverage counsel referencing his review of pleadings and requesting certain documentation); 4) a letter dated January 26, 2007 (Carlton Fields' acknowledgment of the December 19, 2006 letter); 5) a letter dated January 8, 2008 (advice of upcoming destructive testing and potential expert retention); 6) a letter dated September 30, 2008 (advice of upcoming mediation); 7) a letter dated July 23, 2009 (advice of upcoming jury selection); and 8) a letter dated August 3, 2009 (notice of global settlement). (DE #124, at ¶18–31; DE #157, at ¶18–31). In November 2009, Carlton Fields first submitted to Westchester invoices for Miller & Solomon's defense costs. (DE #124, at ¶33; DE #157, at ¶33). Westchester did not pay the invoices.

On April 22, 2011, Plaintiff filed a Complaint for Declaratory and Supplemental Relief against Westchester in Case No. 11-21430-CV-KMM. On November 23, 2011,

this Court granted Defendant Crum & Forster's Motion to Consolidate Cases (DE #42). Pursuant to that Order, Case No. 10-24590-CV-JLK and Case No. 11-21430-CV-KMM were consolidated under the first-filed case, Case No. 10-24590-CV-JLK. On December 28, 2011, Plaintiff filed an Amended Complaint (DE #58) that remains the operative pleading against Westchester in this case.[3]

In the Amended Complaint, the Plaintiff seeks a declaratory judgment "(a) declaring that Plaintiff, as equitable subrogee of Miller & Solomon General Contractors, Inc., is entitled to coverage under Defendant's Commercial General Liability Policy; (b) declaring that Defendant is responsible for all (or some) of the attorneys' fees and costs Plaintiff expended defending Miller & Solomon General Contractors, Inc. in the lawsuit prosecuted by Ocean Grande Beach & Marina Condominium;" and © granting certain other relief predicated on the foregoing. Discovery closed on February 17, 2012. On February 24, 2012, the parties filed cross-motions for summary judgment.

## II. Legal Standard

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it is may determine the outcome under

---

[3] The Amended Complaint also contained Count II, which related to defense costs in a lawsuit regarding a separate property, Peninsula. Plaintiff advised the Court that Count II is moot on February 24, 2012. *See* (DE #125, at 2).

the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen*, 121 F.3d at 646. If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must show specific facts to support that there is a genuine dispute. *Id.*

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exits. *Id.* If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See Anderson*, 477 U.S. at 249–50.

### III. Analysis

The Court will determine whether Plaintiff is an equitable subrogee of Miller & Solomon, and, if so, whether Westchester is responsible for attorneys' fees and costs Plaintiff expended defending Miller & Solomon in the Ocean Grande action.

Westchester argues that Hartford is not the equitable subrogee of Miller & Solomon because the essential elements of equitable subrogation, as defined by Florida law, are not satisfied. Alternatively, Westchester argues, if Hartford is an equitable

subrogee, Westchester cannot be responsible for attorneys' fees and costs Hartford expended defending Miller & Solomon in the Ocean Grande action because Westchester never received a valid tender of the defense of that lawsuit.

The Court turns first to the issue of equitable subrogation. Hartford's claims are predicated on its asserted status as an equitable subrogee of Miller & Solomon. (DE #58). The parties dispute that the elements of equitable subrogation are met. To maintain its claim of equitable subrogation, Hartford must prove each of the following five elements: "(1) the subrogee made the payment to protect his or her own interest; (2) the subrogee did not act as a volunteer; (3) the subrogee was not primarily liable for the debt; (4) the subrogee paid off the entire debt; and (5) subrogation would not work any injustice to the rights of a third party." *Nova Information Systems, Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1005 (11th Cir. 2004); *DaimlerChrysler Ins. Co. v. Arrigo Enters., Inc.*, 63 So.3d 68, 72 (Fla. 4th DCA 2011). The Court will address each of the first four elements in turn.[4]

### 1.   *Hartford's Payment Was Not Made to Protect Its Own Interest*

Westchester argues that the first element of equitable subrogation is not satisfied, because Hartford's payment was not made to protect its own interest. Hartford's corporate representative, however, states that Hartford was forced to defend Miller &

---

[4] Failure to satisfy even one of the five elements would defeat a party's claim for equitable subrogation. *Nova Information Systems, Inc.*, 365 F.3d at 1005.

8

Solomon to protect its own interest even though Hartford was not primarily liable for the debt, because Hartford's liability was co-extensive with Miller & Solomon's. (DE #116-1, at 5). Westchester contends that there are three mutually exclusive options regarding why the costs sought in this lawsuit were paid: (1) solely to protect Hartford's own interest; (2) to protect both Hartford and Miller & Solomon's interests; or (3) solely to protect Miller & Solomon's interest. Hartford admitted in the affidavit of its corporate representative that "[t]hese costs are related solely to the defense of Miller & Solomon in the Ocean Grande Action and do not include expenses relating to remediation or Hartford's defense." *Id.* Therefore, the Court finds that Hartford's payment of the defense costs was solely to protect the interests of Miller & Solomon. Accordingly, Hartford's payment cannot be regarded as having been made to protect Hartford's own interest, and the first element of equitable subrogation is not fulfilled.

2. *Volunteer Doctrine*

The volunteer doctrine provides that an imdemnitor is not liable for any money the surety expends if the surety cannot establish as a matter of law that it was obligated to pay out or cure defects under the terms of a performance bond. *Great Am. Ins. Co. v. School Bd. of Broward County, Florida*, No. 09-61636-CIV, 2010 WL 4366865, at *20 (S.D. Fla. Jul. 30, 2010) (Zloch, J.). There are three parties to a bond: the surety, the contractor and the owner (here, Hartford, Miller & Solomon and Hillsboro Mile). In the present case, the bond required Hartford to guarantee Miller & Solomon's performance of its

contractual obligations regarding the construction project, not to provide a defense. Specifically, the bond recites in part that "[Miller & Solomon] and [Hartford], jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to [Hillsboro Mile] for the performance of the Construction Contract, which is incorporated herein by reference." (DE #112 at ¶1; DE #150 at ¶1). Hartford's role as surety can be thus described: "The surety on a bond is lending its credit to make certain, if the conditions of the bond are violated, that the aggrieved party will be protected in the event the principal is financially unable to comply with the conditions of the bond." *Western World Ins. Co. v. Travelers Indem. Co.*, 358 So.2d 602, 604 (Fla. 1st DCA 1978).

Hartford relies upon *Western World*, 358 So.2d 602, for the proposition that "even when a bond does not include a duty to defend, the surety can pursue an equitable subrogation claim against its principal's [commercial generality liability] carrier for defense costs the surety incurred defending the principal, which the [commercial generality liability] carrier should have borne." (DE #151, at 11–12). In essence, Hartford admits its lack of a duty to defend under the bond, but argues that it is still not a volunteer, because its liability was co-extensive with that of Miller & Solomon. The Court does not find support for this proposition.

Rather, in *Western World,* the only discussion of an actual recovery of defense costs relates to defense costs sought by the insured, not the surety. *See Western World,*

358 So.2d at 604 (affirming the trial court's holding that the insurer was liable to the insured for attorney's fees incurred by the insured after the insurer withdrew from the original suit filed by the underlying plaintiff). The surety's recovery in *Western World* was limited to the amount the surety had paid toward a judgment. *See id.* ("[The surety] paid the judgment and the court subsequently directed that [the surety] recover $5,000 from [the insured]."). Therefore, the facts underlying the holding *Western World* differ from the factual scenario in the present action.

"The dispositive inquiry surrounding the volunteer doctrine is whether the party seeking relief was obligated to act under the terms of the bond or agreement." *Great Am. Ins. Co.*, 2010 WL 4366865, at *20. Here, the party seeking relief, Hartford, admits that it was not obligated to defend Miller & Solomon under the terms of the bond or agreement. (DE #116-1, at 5). Accordingly, Hartford acted as a volunteer when it defended Miller & Solomon. The Court finds Hartford cannot satisfy the second element needed to bring a claim of equitable subrogation.

3. *Liability for the Debt*

The Court now turns to the third and fourth elements Hartford must prove to sustain its claim for equitable subrogation – whether Hartford was primarily liable for the debt and whether Hartford paid off the entire debt. *See Nova Information Systems, Inc.*, 365 F.3d at 1005. Subrogation is not available to a party who pays his own debt. *Nova Information Systems, Inc.*, 365 F.3d at 1005. Here, the "debt" Hartford seeks to recover is

the attorneys' fees incurred in the Ocean Grande action. Hartford argues that the money it paid for defense costs in the Ocean Grande action was Westchester's legal obligation to defend its insured under the policy.

The relevant question, however, is not whether Hartford has paid anyone's debt, or Westchester's debt, but whether it has paid the debt of its principal, Miller & Solomon. A judgment against the principal or a settlement of a claim against the principal would fall within the latter category. *See Continental Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 377 (Fla. 2008). Pursuant to Hartford's bond, the only debt for which Hartford could be held liable is to Hillsboro Mile for deficiencies in work by Miller & Solomon. At issue in the above-styled action, however, is a debt for defense costs. Expenses incurred by a secondarily liable carrier in the defense of its insured have been universally awarded when that company sues a primary insurer of the same insured, which should have undertaken that defense. *American and Foreign Insurance Co. v. Avis Rent-A-Car System, Inc.*, 401 So.2d 855, 858 (Fla. 5th DCA 1981). This is not the case here.

Rather, the case here is about a principal's defense costs, as Hartford was a named party in the Ocean Grande action. A principal's defense costs are not the principal's debt to anyone. They are merely the principal's own expenses. *See Cotter Corp. v. American Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 833 (Colo. 2004) (en banc) ("[Equitable subrogation] does not provide a remedy to a party seeking to recover its own expenses. . . . [It] only allows a party who has paid the debt of another to recover from a liable third

12

party. . . .Therefore, [the insured] cannot rely on the doctrine of equitable subrogation to recover defense costs."). Given that a co-insurer with a duty to defend cannot subrogate against another co-insurer, there is no reason why a surety without a duty to defend should be able to do so.[5]

The authorities Hartford cited in support of the proposition that attorneys' fees are a form of debt do not come to Hartford's aid. In *Western World,* the surety's recovery was limited to the amount the surety had paid toward a judgment. *Western World,* 358 So.2d at 604. The case of *Price v. Scharps,* 405 So. 2d 1043, 1044 (Fla. 3d DCA 1981), involved a second purchaser's extinguishment of a third-party lien for a stud fee on a mare, which lien should have been paid by the mare's first seller. For the case to have any similarity to the present case and advance Hartford's argument, it would have had to involve attorneys' fees spent by the second purchaser in the defense of the first seller. It did not. The case of *Chancey v. Bauer,* 97 F.2d 293, 294 (5th Cir. 1938), involves the unremarkable proposition that an attorney has a lien on his client's recovery in litigation. None of the cases relied upon by Hartford advance the notion that a surety's payment of its principal's defense costs confers a right of equitable subrogation on the surety against

---

[5] Indeed, if Hartford had defended Miller & Solomon pursuant to its obligation as a liability insurer, Hartford would be precluded from subrogating against Westchester under Florida law, which prohibits subrogation by an insurer against a co-insurer. *See, e.g., Pennsylvania Lumbermens Mut. Ins. Co. v. Indiana Lumberments Mut. Ins. Co.,* 43 So. 3d 182 (Fla. 4th DCA 2010); *Continental Cas. Co. v. United Pac. Ins. Co.,* 637 So. 2d 270, 272 (Fla. 5th DCA 1994); *Argonaut Ins. Co. v. Md. Cas. Co.,* 372 So. 2d 960, 963 (Fla. 3d DCA 1979) (holding that an insurer is not entitled to recover from another insurer the costs of defending a mutual insured, where there is no contractual relationship between the insurers).

the principal's insurer. Accordingly, the defense costs incurred by Hartford in the Ocean Grande action are not a debt of anyone under Hartford's bond. The Court concludes that Hartford has not paid a debt of Miller & Solomon, and therefore has not fulfilled the third and fourth elements of equitable subrogation.

## IV. Conclusion

Finding the foregoing analysis of the elements of equitable subrogation is sufficient to entitle Defendant Westchester to summary judgment and to require the denial of Hartford's summary judgment motion, the Court declines to reach the issue of whether Westchester received a valid tender of the defense of the Ocean Grande action.

Accordingly, having considered the parties' filings and being otherwise advised, it is hereby **ORDERED, ADJUDGED, and DECREED** that:

1. Defendant Westchester Surplus Lines Insurance Company's Motion for Summary Judgment against Hartford Accident and Indemnity Company **(DE #113)** be, and the same is hereby **GRANTED.**

2. Plaintiff Hartford's Motion for Summary Judgment against Westchester Surplus Lines Insurance Company **(DE #125)** be, and the same is hereby, **DENIED.**

3. The Court retains jurisdiction of this action to enter further orders that are proper, including motion for costs and attorneys' fees, if any.

4. The above-styled case is **DISMISSED WITH PREJUDICE** as to the

Defendant Westchester Surplus Lines Insurance Company.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 15th day of June, 2012.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc: All counsel of record