## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 10-24590-CIV-KING

HARTFORD ACCIDENT AND INDEMNITY
COMPANY, a foreign corporation, as equitable
subrogee and real party in interest on behalf of
Miller & Solomon General Contractors, Inc.,

      Plaintiff,

v.

CRUM & FORSTER SPECIALTY INSURANCE
COMPANY, a foreign corporation,

      Defendant.

_____/

HARTFORD ACCIDENT AND INDEMNITY
COMPANY, a foreign corporation, as equitable
subrogee and real party in interest on behalf of
Miller & Solomon General Contractors, Inc.,

      Plaintiff,

v.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, a foreign corporation,

      Defendant.

_____/

## FINAL SUMMARY JUDGMENT

    **THIS MATTER** comes before the Court upon Defendant Crum & Forster

Specialty Insurance Company's Motion for Summary Judgment (DE #131), filed

February 24, 2012, and Plaintiff Hartford Accident and Indemnity Company's

("Hartford") Motion for Summary Judgment (DE #120), filed February 24, 2012. The

Court is fully briefed on both these motions.[1] This matter is therefore ripe for

determination. The Court also proceeds with the benefit of oral argument on the parties'

cross motions for summary judgment, which was held in open court on April 19, 2012.

After careful consideration of the evidence on record and for the reasons detailed below,

the Court finds that summary judgment should be granted in favor of Defendant Crum &

Forster Specialty Insurance Company ("Crum & Forster").

## I.    Factual Background

The record before the Court reflects the following undisputed facts. This is a suit

for declaratory action or, in the alternative, breach of contract, wherein Hartford seeks to

recoup attorney costs and fees incurred in the defense of Miller & Solomon General

Contractors, Inc. ("Miller & Solomon") in a separate lawsuit that resulted in various

settlements. The claims against Crum & Forster in this action relate to the construction of

a condominium building known as the Ocean Grande Beach and Marina Condominium in

Hillsboro Beach, Florida (the "Ocean Grande Project"). Miller & Solomon served as

general contractor for the Project. Hartford, as surety, issued payment and performance

bonds for the Project on behalf of Miller & Solomon. Crum & Forster issued a

commercial general liability policy to Miller & Solomon (the "Policy"), which covered

---

[1] Plaintiff filed a Response (DE #152) to Defendant's Motion on March 9, 2012, to which Defendant replied (DE #172) on March 19, 2012. Defendant filed a Response (DE #158) to Plaintiff's Motion on March 12, 2012, to which Plaintiff replied (DE #178) on March 21, 2012.

the period of December 31, 2002 to December 31, 2003.  Pursuant to the insuring

agreement in the Policy, Crum & Forster agreed to

> "pay those sums that the insured becomes legally obligated to
> pay as damages because of 'bodily injury' or 'property
> damage' to which this insurance applies. We will have the
> right and duty to defend the insured against any 'suit' seeking
> those damages. However, we will have no duty to defend the
> insured against any 'suit' seeking damages for . . . 'property
> damage' to which this insurance does not apply."

On January 5, 2006, the developer notified Hartford of various construction defect

claims by the Ocean Grande Beach & Marina Condominium Association, Inc. (the

"Association"), including claims of water intrusion resulting from Hurricane Wilma in

October 2005, and demanded that Hartford respond under its bond.  Hartford retained the

Carlton Fields law firm (represented by attorney Patricia Thompson, and, later, Tim

Taylor) to represent it and the insolvent Miller & Solomon.

On July 21, 2006, Ms. Thompson of Carlton Fields provided notice and

documentation to Crum & Forster of multiple lawsuits against Miller & Solomon

involving various condominium projects, and requested indemnification and a defense for

Miller & Solomon.  The notice also advised Crum & Forster that pre-litigation claims had

been made against Miller & Solomon with respect to the Ocean Grande Project. This was

Crum & Forster's first notice of any of these claims or lawsuits.  Coverage counsel for

Crum & Forster, Thornton Davis & Fein, P.A. ("TDF") requested additional information

from Carlton Fields relating to these various claims and lawsuits.  On September 15,

3

2006, Ms. Thompson sent TDF a copy of its General Indemnity Agreement with Miller &
Solomon.

The Association filed a complaint in Florida state court against a number of
defendants, including Miller & Solomon on October 3, 2006. The lawsuit also alleged
claims against Hartford on the performance bond.  On October 25, 2006, TDF attorney
Thompson, counsel for Miller & Solomon, tendering its defense and advising that Crum
& Forster was investigating the Ocean Grande claim under a full reservation of rights,
including the right to deny coverage for claims that were not claims for damages resulting
from property damage or were for property damage that did not occur during the policy
period, or for property damage to or arising from any part of Miller & Solomon's work
(which encompassed the entire Ocean Grande project) and included in the
products-completed operations hazard. TDF, representing Defendant Crum & Forster
Specialty Insurance Company, requested copies of all subcontract, performance bonds,
certificates of insurance from subcontractor carriers that would evidence policies that
might cover contractual liability claims by Miller & Solomon against subcontractors, and
documents relative to the claimed damages.

On November 30, 2006, Ms. Thompson of Carlton Fields responded to coverage
counsel's letter dated October 25, 2006. She notified TDF that the Association had filed
suit on October 4, 2006, provided a copy of the Association's complaint, and advised that
Carlton Fields was preparing cross-claims and third-party claims against responsible

subcontractors and their sureties, which would be provided upon completion. Ms. Thompson also advised that she had asked for all of Miller & Solomon's subcontractors to provide copies of their commercial general liability insurance policies, and that she would copy and provide all correspondence regarding the alleged defects on the project. On December 14, 2006, Carlton Fields forwarded a copy of the Association's expert reports and correspondence from its general counsel regarding its claims, along with reports issued by Miami Curtain Wall Consultants Corp. and Willcott Engineering, Inc. In early 2007 Mr. Taylor took over handling of the case for Carlton Fields.

TDF issued a letter (the "Defense Agreement") on April 30, 2007 to Miller & Solomon in care of Ms. Thompson advising that Crum & Forster would agree to participate with Hartford in the defense of Miller & Solomon against all claims asserted in the Association's complaint, subject to a full reservation of rights as set forth in the October 25, 2006 letter, as well as the right to recoup any amounts it paid for the defense of non-covered claims.  The letter also highlighted the Construction Defects exclusion and stated that Crum & Forster would consent to Carlton Fields' continuing to represent Miller & Solomon in the lawsuit, provided that Carlton Fields agreed to comply with Crum & Forster's litigation guidelines, which were enclosed.  TDF asked Carlton Fields to confirm its consent to these terms by signing and returning the letter.

The litigation guidelines required Carlton Fields to submit to Crum & Forster and to Miller & Solomon certain reports, including an integrated defense plan and case

evaluation, specific status reports within 14 days of any deposition taken in the case, and significant development reports on such matters as settlement options and dispositive motions, updated liability and damages analyses, as well as a detailed report and supplemental case analysis at least 30 days prior to any scheduled trial date. The guidelines also required defense counsel provide to Crum & Forster copies of all pleadings, research memoranda, motion papers, legal briefs, deposition transcripts, expert reports, and releases or dismissals, and that counsel timely submit to Crum & Forster all bills for fees and expenses. Further, the guidelines expressly provided that if defense counsel were involved in settlement negotiations, settlement authority must be obtained from Crum & Forster and requests for authority must be made timely and well prior to counsel's advancement of any offer."

Ms. Thompson signed Crum & Forster's Defense Agreement and sent it to Carlton Fields for handling. On May 23, 2007, Mr. Taylor faxed the executed Defense Agreement back to Crum & Forster's coverage counsel. Mr. Taylor's time records show that eight days later, on May 31, 2007, he corresponded directly with Luann Melillo, the adjuster at Crum & Forster who was handling the case.

In the two and a half years following acceptance of Crum & Forster's defense in May 2007 and throughout the remainder of the underlying lawsuit, Carlton Fields never submitted any invoices for legal services or expenses to Crum & Forster. Nor did Carlton Fields submit any reports to Crum & Forster. Carlton Fields did not provide Crum &

Forster with any pleadings (including Miller & Solomon's cross-claims and third-party claims mentioned by Ms. Thompson), or any motions, memoranda or briefs filed by any of the parties or any releases or settlement agreements entered into in the litigation.

On October 1, 2007, Luann Melillo from Crum & Forster wrote to Mr. Taylor reminding him that Crum & Forster was participating in Miller & Solomon's defense of the case and requesting a complete case analysis including any damage matrix and current status of the case. Mr. Taylor did not respond to Ms. Melillo's request. Instead, on January 8, 2008, he sent Ms. Melillo (and other Miller & Solomon commercial general liability carriers) a brief letter advising that the Association would be conducting destructive testing on the project during last two weeks of January and asking Crum & Forster to participate in observing, photographing and/or videotaping it. In response to Mr. Taylor's letter, Crum & Forster requested that TDF send an attorney to observe the testing.

After Mr. Taylor's and Ms. Melillo's direct correspondence in May and October 2007, Carlton Fields' communications to Crum & Forster throughout the remainder of the case consisted of Mr. Taylor's January 2008 notice of the testing at Ocean Grande and the following six letters directed to Crum Forster's coverage counsel: 1) A one-page letter sent September 30, 2008 instructing Crum & Forster to attend a December 2, 2008 mediation; 2) A one-page letter dated June 4, 2009, which stated that the underlying Ocean Grande case was set for trial on remaining unresolved issues and advised that

Miller & Solomon had been and would continue to attempt reach settlements with various subcontractors and parties; 3) A one-page letter sent June 12, 2009 instructing Crum & Forster to appear at a June 19, 2009 mediation; 4) A two-page letter dated June 18, 2009 in response to Crum & Forster's request for a premediation and other reports, stating, without explanation, that 9 damage items on an attached 4-page spreadsheet had been released; 5) A one-page letter dated July 23, 2009 advising Crum & Forster that jury selection was to begin on August 3, 2009 on remaining issues in the underlying case; 6) A one-page letter sent August 3, 2009, stating that the case had been successfully resolved with the parties reaching a global settlement,[2] and that he would be forwarding copies of Carlton Fields' invoices for services rendered in the case by the end of the week.

In none of these communications did Carlton Fields advise Crum & Forster that it had commenced settlement negotiations in October 2007, or that Miller & Solomon had released claims for defense costs and fees against subcontractors and their insurers and sureties. In addition, during the underlying litigation, Carlton Fields never provided Crum & Forster with any case analysis or pleadings in the case, including the various cross-claims and third-party complaints, complete copies of any of the subcontracts, copies of the insurance certificates or subcontractor policies so that Crum & Forster could ascertain what claims Miller & Solomon actually may have had against its subcontractors

---

[2] Carlton Fields' work culminated in the August 24, 2009 global settlement agreement in which Miller & Solomon released subcontractors RC Aluminum, Aspen Air Conditioning, and Hudson & Sparling from all claims, including "attorneys' fees and potentially taxable costs previously incurred by the parties."

or their insurers or sureties.  Carlton Fields did not seek or obtain permission from Crum & Forster to approve any of the settlements.

On November 10, 2009, Hartford sent Crum & Forster and Defendant Westchester Surplus Lines Insurance Company a letter seeking reimbursement for $1,478,839.69 in Carlton Fields' fees and defense costs.  Attached to the letter was a voluminous stack of redacted Carlton Fields bills for the period from January 2006 through September 30, 2009, totaling $839,116.57. The letter also sought payment for defense experts, CSSI ($485,785.84), Miami Curtain Wall ($133,997.28), and Schnell Contractors, Inc. ($19,940.00). Lastly, included with the letter was a "fully executed Settlement Agreement and Mutual Limited Release and General Release as to IBA Consultants, Inc."

On March 19, 2010, in response to the request for reimbursement, Crum & Forster coverage counsel requested additional documentation.  On April 1, 2010, Carlton Fields provided over 4,000 pages of documents, including dozens of settlement agreements, releases, and dismissals that had been generated in the Ocean Grande case between February 2008 and December 2009.  Crum & Forster did not pay the submitted bill and were jointly sued on December 22, 2010.

## II.    Legal Standard

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,*

9

477 U.S. 317, 322 (1986). A fact is "material" if it is may determine the outcome under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen*, 121 F.3d at 646. If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must show specific facts to support that there is a genuine dispute. *Id.*

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exits. *Id.* If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See Anderson*, 477 U.S. at 249–50.

## III.    Analysis

In its Motion for Summary Judgment, Crum & Forster submits Carlton Fields and Miller & Solomon materially breached both the Defense Agreement and the insurance contract, and the actions of Carlton Fields after entering into the Defense Agreement gave rise to an incurable conflict of interest, substantially prejudicing Crum & Forster and forfeiting any rights Miller & Solomon had under the policy. (Def.'s Mot., DE #131, at

10

2).  Alternatively, Crum & Forster argues for partial summary judgment determining (a)

that Hartford has no right to recover any amounts it paid associated with the performance

of its bond (for which Crum & Forster had no possible contractual obligation) and for

defending itself the independent claims brought against it by the Association (for which

Crum & Forster also had no possible contractual obligation); and (b) that Hartford has no

rights to recover any amounts incurred in defending against the developer's later-filed

complaint against it and Miller & Solomon in the underlying case, of which Crum &

Forster was never notified.  *Id.*  The Court turns first to the issue of whether Hartford

breached the Defense Agreement.

Crum & Forster argues that Hartford's material breach of the Defense Agreement

relieves Crum & Forster of the obligation to reimburse Hartford for defense costs and

fees.  In the Defense Agreement, Crum & Forster agreed to defend Miller & Solomon

under a reservation of rights, but only upon the condition that Carlton Fields, counsel for

Miller & Solomon and Hartford, agreed to be bound by Crum & Forster's litigation

guidelines.

Here, the undisputed facts demonstrate that Carlton Fields failed to abide by the

litigation guidelines.  After the parties entered into the Defense Agreement, the flow of

information between Crum & Forster and Carlton Fields was negligible.  In violation of

the agreement between the lawyer, Carlton Fields did not send any bills or reports to

Crum & Forster in the following months, nor did Carlton Fields keep Crum & Forster

11

apprised of the ongoing settlement negotiations and mediations.  After the underlying

litigation commenced, Carlton Fields prepared and filed contractual indemnity claims

against the subcontractors and their sureties seeking, not only indemnity for damages

arising from defective work, but also including defense costs and fees incurred in the

lawsuit. Carlton Fields did not advise, or provide Crum & Forster copies of, these

pleadings. Nor did Carlton Fields provide Crum & Forster complete copies of the

subcontracts showing the additional insured provisions, the certificates of insurance

identifying the subcontractor carriers, or the subcontractors' policies, all which it

undisputedly had in its possession by January 2007.  Commencing on October 2, 2007,

and continuing throughout the entire underlying litigation, Carlton Fields negotiated with

the various subcontractors, participated in mediations with them, and reached settlement

agreements in which Miller & Solomon released valuable rights against the

subcontractors, their sureties, and their insurers, including contractual indemnity rights for

Miller & Solomon's defense costs and fees. Miller & Solomon released these rights

without notice to or the knowledge of Crum & Forster.

Several times, Crum & Forster sought more information from Carlton Fields when

apprised of activity in the underlying litigation.  For example, on October 1, 2007, Luann

Melillo contacted Carlton Fields directly, again requesting information about the

underlying case. Carlton Fields did not respond to the request, but on January 8, 2008,

asked her to send someone to observe testing at the Ocean Grande Project.  In June 2009,

Crum & Forster's coverage counsel requested pre-mediation reports from Carlton Fields without success.

Hartford argues Crum & Forster cannot meet the standard for a material breach and lack of cooperation and thus cannot be relieved from liability under the Defense Agreement for several reasons: 1) Crum & Forster failed to exercise diligence and good faith in bringing about Miller & Solomon's cooperation; and 2) Crum & Forster was not prejudiced by Hartford's failure to comply with the litigation guidelines.  (DE #152, at 11).[3]

Both parties cite *Continental Casualty Co. v. City of Jacksonville*, 283 Fed. Appx. 686, 2008 WL 1793259, (11th Cir. 2008) as persuasive.   In that case, the City of Jacksonville was sued in a class action lawsuit. The City's insurers to defend under a full reservation of rights, and accepted and agreed to pay the City's chosen law firm as defense counsel. *Id.* at 687.  The insurers attended four of five initial mediation sessions,

---

[3] Under long-established Florida precedent, an insurer may deny insurance coverage and any payment of damages to the individual damaged by an insured "where the insurer has exercised diligence and good faith in seeking to bring about the cooperation of the insured, and where the insurer has in good faith complied with the terms and conditions of the policy." *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1338 (S.D. Fla. 2010).  A total failure to comply with provisions made a prerequisite to suit under a policy may constitute a breach precluding recovery from the insurer as a matter of law. *Id.*  Not every failure to cooperate will release the insurance company – only that failure which constitutes a material breach and substantially prejudices the rights of the insurer in defense of the cause will release the insurer of its obligation to pay. *Id.*; *see also Ramos v. Northwestern Mutual Insurance Company*, 336 So.2d 71, 75 (Fla. 1976).  Although the question of whether the failure to cooperate is so substantially prejudicial as to release the insurance company from its obligation ordinarily constitutes a question of fact, under some circumstances, particularly where the facts are admitted, it would be a question of law. *Id.*

but rejected the first settlement offer because it lacked sufficient information to evaluate it. *Id.* at 693. Although the insurers requested repeatedly that the City discuss with it any potential settlement offer prior to making it, the City thereafter engaged in numerous settlement discussions with the plaintiffs without the insurers' knowledge, and ultimately settled the case without the insurers' consent. *Id.* The settlement capped the insured's liability to $25 million while stipulating to a consent judgment of $75 million enforceable only against [the insurer] and other insurers. *Id.* at 689. The insurers thereafter brought an action seeking declaratory judgment on its obligations under the policies. *Id.* at 688. The district court granted summary judgment for the insurers, determining the insured's resultant breach of the cooperation clause released the insurer of its obligations under the relevant insurance contracts.

The Eleventh Circuit affirmed the summary judgment for the insurers. The Court first held that by agreeing to defend the City under a full reservation of rights, the insurers fulfilled its legal duty to defend, and that by accepting, and not rejecting the insurers' defense, the City agreed to give them control of the defense and were required to cooperate with them in the defense. *Id.* at 690. The court also found that the settlement agreement substantially prejudiced the insurers, particularly given the City's failure to inform it of settlement discussions or to provide it full information regarding the details of those settlements. *Id.* at 692. Finally, the Eleventh Circuit held that the City's

duplicitous conduct released Transportation of its obligations under the insurance contracts as a matter of law. *Id.* at 693.

Crum & Forster cites *City of Jacksonville* for the proposition that it was not obligated to pay defense costs when Hartford settled the lawsuits without Crum & Forster's input and knowledge.  (DE #158, at 11).  Carlton Fields, as counsel for Miller & Solomon and Hartford, commenced negotiations with and entered into settlements with numerous subcontractors and their insurers releasing valuable indemnity and additional insured defense rights, without disclosing information about the negotiations or settlements to Crum & Forster.  (DE #158, at 12).

While Crum & Forster could have been more diligent in enforcing the terms of the Defense Agreement, it did not have an affirmative duty to do so under the contract. Hartford, on the other hand, did have an affirmative duty under the Defense Agreement to comply with the litigation guidelines.  Crum & Forster's lack of action in enforcing the litigation guidelines does not excuse Hartford from performance under the terms of the Defense Agreement.  Rather than interpreting an insurance policy, which occurred in *City of Jacksonville*, the Court finds this case is a contract dispute and controlled by interpretation of the terms of the Defense Agreement Contract.

There are no material factual disputes on what either party did or did not do in connection with the underlying lawsuit.  It is undisputed that numerous negotiations took place and settlements were entered into by Plaintiff without the input or consent of Crum

15

& Forster.  Hartford had an affirmative duty under the Defense Agreement to comply

with the litigation guidelines and materially breached that duty.  The Court finds that the

failure by Hartford to comply with the Defense Agreement relieves Crum & Forster of

any obligation to share in the payment of defense costs and fees.  Finding the resolution

of the contract dispute dispositive, the Court will not address alternative issues raised by

the parties.

**IV.    Conclusion**

Accordingly, having considered the parties' filings and being otherwise advised, it

is hereby **ORDERED, ADJUDGED, and DECREED** that:

1.    Defendant Crum & Forster Specialty Insurance Company's Motion for

Summary Judgment against Hartford Accident and Indemnity Company

**(DE #131)** be, and the same is hereby **GRANTED.**

2.    Plaintiff Hartford Accident and Indemnity Company's Motion for Summary

Judgment against Crum & Forster Specialty Insurance Company **(DE #120)**

be, and the same is hereby **DENIED.**

3.    The Court retains jurisdiction of this action to enter further orders that are

proper, including motion for costs and attorneys' fees, if any.

4.    The above-styled case is **DISMISSED WITH PREJUDICE** as to the

Defendant Crum & Forster Specialty Insurance Company.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal

16

Justice Building and United States Courthouse, Miami, Florida, this 15th day of June,

2012.

                                  JAMES LAWRENCE KING
                                  UNITED STATES DISTRICT JUDGE
                                  SOUTHERN DISTRICT OF FLORIDA

cc: All counsel of record

17