IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-24590-CIV-KING

HARTFORD ACCIDENT AND INDEMNITY
COMPANY, a foreign corporation, as equitable
subrogee and real party in interest on behalf of
Miller & Solomon General Contractors, Inc.,

        Plaintiff,

v.

CRUM & FORSTER SPECIALTY
INSURANCE COMPANY, a foreign
corporation,

        Defendant.

_____/

PLAINTIFF HARTFORD ACCIDENT AND INDEMNITY
COMPANY'S RESPONSE IN OPPOSITION TO DEFENDANT
CRUM & FORSTER SPECIALTY INSURANCE COMPANY'S VERIFIED
MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE EXPENSES AND
COSTS AGAINST PLAINTIFF WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 7.3(a) of the Local Rules of the United States District Court for the Southern District of Florida, Section 768.79 of the Florida Statutes, and 28 U.S.C. § 1920, Plaintiff Hartford Accident and Indemnity Company ("Hartford") hereby files its Response in Opposition to the Verified Motion for Attorneys' Fees and Non-Taxable Expenses and Costs (the "Motion") filed by Defendant Crum & Forster Specialty Insurance Company ("Crum & Forster") and states:

INTRODUCTION

1.    In the instant action, Hartford filed a complaint seeking declaratory relief and, in the alternative, damages for breach of contract. [DE 39]. Crum & Forster answered and counterclaimed for declaratory relief. [DE 41].

2.    On December 1, 2011, Crum & Forster served Hartford with a proposal for settlement based upon Section 768.79 of the Florida Statutes. [DE 209-1]. The proposal for settlement is directed to Hartford's Amended Complaint and Crum & Forster's Counterclaim. [DE 209-1 at ¶ 3(B)].

3.      On June 15, 2012, the Court entered final summary judgment in Crum & Forster's favor.  [DE 195].

4.      On June 21, 2012, the Court entered final judgment in favor of Crum & Forster. [DE 197; DE 198].

5.      On July 20, 2012, Crum & Forster filed its Verified Motion for Attorneys' Fees and Non-Taxable Expenses and Costs.  [DE 209].  According to a chart in Crum & Forster's Motion summarizing the fees requested, Crum & Forster seeks recovery of $281,603.00 in fees for the approximately six months of work, which are broken down as follows: $209,310.50 in attorneys' fees, which represents 908.4 attorney hours, and $72,292.50 in legal assistant fees, which represents 850.5 in legal assistant hours.  [DE 209 at 4-5].

6.      Crum & Forster's proposal for settlement is invalid and therefore unenforceable because: (a) the proposal for settlement falls outside the purview of Section 768.79 of the Florida Statutes; and (b) the proposal for settlement is too ambiguous to be enforceable.

7.      Crum & Forster's Motion is deficient because: (a) Crum & Forster fails to disclose the terms of any applicable fee agreement between it and its legal counsel; (b) Crum & Forster fails to file unredacted billing records; (c) numerous time entries by Crum & Forster's legal assistants do not identify the legal assistant assumedly performing the task; and (d) Crum & Forster improperly annexes to its Motion time entries predating the proposal for settlement.

8.      If the Court finds that Crum & Forster's proposal for settlement is valid, then the Court should limit Crum & Forster's recovery because: (a) Crum & Forster engaged in needless discovery regarding the underlying lawsuit; (b) all the time spent by Crum & Forster with regard to its didactic jurisprudential expert John Bond Atkinson, Esq. is unreasonable and should be excluded given the Court's exclusion of said opinion testimony; (c) Crum & Forster improperly seeks recovery of travel time; (d) Crum & Forster improperly seeks recovery of clerical and secretarial work; (e) Crum & Forster's legal assistants have excessive and unnecessary time entries; (f) Michael C. Gordon, Esq. has excessive and unnecessary time entries with regard to Crum & Forster's stricken legal expert John Bond Atkinson, Esq.; and (g) Crum & Forster's legal assistant's time is duplicative, redundant and evinces block billing.

9.      If the Court believes that Crum & Forster's billing records are too voluminous, then Hartford requests that the Court apply, across-the-board, a reduction of fifty percent.  If the Court does not believe that Crum & Forster's billing records are too voluminous, then Hartford

2

respectfully directs the Court to Hartford's objections as to Crum & Forster's specific time entries.  (A true and correct copy of Hartford's objections are attached hereto as Exhibit "A").

10.    Hartford submits an affidavit of its expert as to the reasonableness of Crum & Forster's legal fees.   (A true and correct copy of Hartford's expert's affidavit as to the reasonableness of Crum & Forster's fees is attached hereto as Exhibit "B").

MEMORANDUM OF LAW IN RESPONSE TO<br>CRUM & FORSTER'S MOTION FOR ATTORNEYS' FEES

I.    **Crum & Forster's proposal for settlement is invalid and thus Crum & Forster cannot recover attorneys' fees and costs.**

A.   **Crum & Forster's proposal for settlement falls outside the purview of Section 768.79 of the Florida Statutes.**

By promulgating Section 768.79 of the Florida Statues, the Florida Legislature created a substantive right to attorneys' fees, but only under certain limited circumstances enumerated therein.  *See S.E. Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So. 3d 73, 80 (Fla. 2012).[1] One such limitation included by the Florida Legislature is that the offer of judgment statute only creates a substantive right to fees in a "civil action for damages."  Fla. Stat. § 768.79(1).[2]

By way of illustration, Florida's judiciary has refused to apply the statute to forfeiture proceedings and will revocation proceedings because neither is a "civil action for damages."  *See Rosado v. Bieluch*, 827 So. 2d 1115 (Fla. 4th DCA 2002), *review denied*, 845 So. 2d 892 (Fla. 2003); *Miller v. Hayman*, 766 So. 2d 1116 (Fla. 4th DCA 2000).

---

[1] In the American legal system, each party generally must pay its own attorneys' fees and expenses.  *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  However, in order to advance a variety of public policy goals, Congress and the states have enacted hundreds of laws that shift attorneys' fees to an opposing party.  *See Kenny A. v. Perdue*, 547 F. 3d 1319, 1337 (11th Cir. 2008) (Carnes, J. dissenting from denial of rehearing *en banc*).  One of these laws, Section 768.79 of the Florida Statutes, shifts fees to encourage parties to settle cases without a trial and to sanction parties who unreasonably reject settlement offers.  *See Allstate Prop. & Cas. Ins. Co. v. Lewis*, 14 So. 3d 1230, 1235 (Fla. 1st DCA 2009).  The Eleventh Circuit has deemed the attorneys' fee component of said statute substantive, rather than procedural law, for purposes of the *Erie* Doctrine.  *See McMahan v. Toto*, 256 F. 3d 1120, 1132 (11th Cir. 2001); *Menchise v. Akerman Senterfitt*, 532 F. 3d 1146, 1150 (11th Cir. 2008).  Certain portions of Rule 1.442 of the Florida Rules of Civil Procedure are also substantive under *Erie*.  *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F. 3d 1254, 1258 (11th Cir. 2011).

[2] In fact, prior to 1990, the offer of judgment statute provided that it applied in "any action to which this part applies."  *See* Ch. 86-160, § 58, Laws of Fla.  However, in 1990, the legislature amended the offer of judgment statute so that it applied "[i]n any civil action for damages filed in the courts of this state."  *See* Ch. 90-119, § 48, Laws of Fla.

In the context of insurance coverage litigation, when a complaint seeks only declaratory relief as to insurance coverage, and no damages or payment of money is directly requested, Section 768.79 of the Florida Statutes is inapplicable and a trial court correctly denies a request for attorneys' fees.  *See Nat'l. Indem. Co. of the S. v. Consol. Ins. Servs.*, 778 So. 2d 404, 408 (Fla. 4th DCA 2001), *cause dismissed*, 791 So. 2d 1096 (Fla. 2001).

Moreover, "Florida intermediate courts have refused to apply the statute in cases in which both money damages and nonmonetary relief were sought."  *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F. 3d 1254, 1262 (11th Cir. 2011).  To reach said conclusion, the intermediate appellate courts of Florida have strictly construed Section 768.79 of the Florida Statutes, due to the fact that the Florida Supreme Court requires same.  *Palm Beach Polo Holdings, Inc.*, 22 So. 3d at 144-45.  First, the statute imposes a penalty and thus it "must be strictly construed in favor of the one against whom the penalty is imposed and is never extended by construction."  *Sarkis*, 863 So. 2d at 218-23.  Second, the statute must be strictly construed because it is in abrogation of the common law rule against awarding attorneys' fees.  *See Willis Shaw Exp., Inc. v. Hilyer Sod, Inc.*, 849 So. 2d 276, 278-79 (Fla. 2003).

For example, the District Court of Appeal of Florida, Fourth District, has held that "when an action seeks non-monetary relief, such as a pure declaration of rights or injunctive relief, then the fact that it *also* seeks damages does not bring it within the offer of judgment statute."  *Palm Beach Polo Holdings, Inc. v. Equestrian Club Estates Property Owners Association, Inc.*, 22 So. 3d 140, 144 (Fla. 4th DCA 2009) (emphasis in original).  Similarly, the District Court of Appeal of Florida, Fifth District, has held that "section 768.79 is inapplicable where a party's general offer of settlement is directed to a claim in which both damages and non-monetary relief is sought."  *Winter Park Imports, Inc. v. JM Family Enterprises, Inc.*, 66 So. 3d 336, 341-42 (Fla. 5th DCA 2011).

The federal judiciary of Florida has refused to award attorneys' fees and costs based upon Florida's offer of judgment statute when the proposal for settlement encompassed causes of action seeking monetary and non-monetary relief, despite the fact that acceptance of the proposal for settlement would have extinguished all monetary and non-monetary claims.  *See Horowitch v. Diamond Aircraft Indus., Inc.*, No. 6:06-cv-1703-Orl-19KRS, 2010 WL 2136475 (M.D. Fla. May 27, 2010).

4

Crum & Forster's Counterclaim [DE 41] falls outside the purview of Section 768.79 of the Florida Statutes because it seeks either: (a) only declaratory relief as to insurance coverage and no damages or payment of money, *see Nat'l. Indem. Co. of the S.*, 778 So. 2d at 408, or if not purely non-monetary relief, (b) both damages and non-monetary relief. *See Palm Beach Polo Holdings, Inc.*, 22 So. 3d at 144. For example, Crum & Forster's Counterclaim states: "WHEREFORE, Crum & Forster respectfully requests that the Court adjudge and declare the following: That the policy provides no coverage for all or any portion of the claims asserted against Miller & Solomon in the Underlying Action . . . ." [DE 41 at 14]. Equally, Crum & Forster's proposal for settlement [DE 209-1 at ¶ 3(B)] renders Section 768.79 of the Florida Statutes "inapplicable" because Crum & Forster's "general offer of settlement is directed to a claim [i.e,. Crum & Forster' Counterclaim] in which [if not purely non-monetary relief] both damages and non-monetary relief is sought." *Winter Park Imports, Inc.*, 66 So. 3d at 341-42.

**B.   Crum & Forster's proposal is too ambiguous to be enforceable.**

Crum & Forster's proposal is too ambiguous to be enforceable. *See Hibbard ex rel. Carr v. McGraw*, 918 So. 2d 967, 971 (Fla. 5th DCA 2005) ("Because the offer of judgment statute and related rule must be strictly construed, virtually any proposal that is ambiguous is not enforceable").

Although the terms of Crum & Forster's proposal limit Hartford's taxable costs upon Hartford's acceptance of the proposal, Crum & Forster's proposal ambiguously leaves open the possibility that if Hartford accepts Crum & Forster's proposal for settlement and files a notice of voluntary dismissal with prejudice (as required by Crum & Forster's proposal) [DE 209-1 at ¶ 3(C)], then Crum & Forster could be entitled to tax costs under Rule 54(d)(1) of the Federal Rules of Civil Procedure as the prevailing party. *See Mathews v. Crosby*, 480 F. 3d 1265, 1276 (11th Cir. 2007) ("The Defendants, having obtained from Mathews a voluntary dismissal with prejudice, are considered prevailing parties").

Crum & Forster's proposal for settlement is limited to settling the claims "arising out of the facts alleged in" Hartford's Amended Complaint and Crum & Forster's Counterclaim [DE 209-1 at ¶ 3(B)], and thus the proposal is ambiguous because it is unclear whether the costs "arose" from the "facts" sued upon in Hartford's Amended Complaint and Crum & Forster's Counterclaim. It is possible, if not plausible, that Crum & Forster's costs did not "arise" from the transaction and occurrence sued upon in Hartford's Amended Complaint and Crum &

Forster's Counterclaim.  Moreover, Hartford did not know the amount of costs Crum & Forster had expended when Crum & Forster tendered its proposal and thus no rational decision could be made due to the lack of information.  A scenario could arise where the costs incurred exceed the amount offered in the proposal.  Crum & Forster did not need to require acceptance of the proposal to be conditioned upon Hartford's filing of a notice of voluntary dismissal with prejudice, as the proposal could have required the parties to sign a joint stipulation for dismissal with prejudice setting forth that each party would be responsible for its own costs.

Accordingly, the Court should deny Crum & Forster's Motion.

**II.     Crum & Forster's Motion is deficient and should be denied on that basis alone.**

      **A. Crum & Forster's failure to disclose the terms of any applicable fee agreement coupled with the Court's denial of Hartford's request for post-judgment discovery to obtain same have severely prejudiced Hartford.**

The local rules of this Court require that a motion for attorneys' fees disclose the terms of any applicable fee agreement, S.D. Fla. L. R. 7.3(a), likely because in Florida's seminal decision adopting the lodestar methodology, the Florida Supreme Court espoused that "in no case should the court-awarded fee exceed the fee agreement reached by the attorney and his client." *Fla. Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1151 (Fla. 1985).[3]

Crum & Forster's failure to disclose the terms of the any applicable fee agreement severely prejudices Hartford.  First, Hartford cannot determine whether the amount of fees that Crum & Forster requests is in excess of an amount that Crum & Forster would be required to pay its legal counsel, as the Court has denied Hartford's request to do so.  [DE 223].  For example, Crum & Forster's litigation guidelines were a focal point of Crum & Forster's defense of this action [DE 158 at 3] and are mentioned on numerous occasions by Judge King in his opinion

---

[3] The Florida Supreme Court later reiterated, on numerous occasions, that a court-awarded fee award can never exceed the fee agreement.  *See Miami Children's Hosp. v. Tamayo*, 529 So. 2d 667, 668 (Fla. 1998); *Lane v. Head*, 566 So. 2d 508, 511-512 (Fla. 1990); *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 831 (Fla. 1990); *Kaufman v. MacDonald*, 557 So. 2d 572, 573 (Fla. 1990); *Perez-Borroto v. Brea*, 544 So. 2d 1022, 1023 (Fla. 1989); *World Service Life Ins. Co. v. Bodiford*, 537 So. 2d 1381, 1381 (Fla. 1989).  All of the Districts of the District Court of Appeal of Florida have rendered opinions declaring that a party cannot recover in excess of its fee agreement.  *See State Farm & Cas. Co. v. Johnson,* 547 So. 2d 940, 941 (Fla. 1st DCA 1988); *Compass Const., Inc. v. First Baptist Church of Cape Coral, Florida, Inc.*, 61 So. 3d 1273, 1275 (Fla. 2d DCA 2011); *W. and S. Life Ins. Co. v. Beebe*, 61 So. 3d 1215, 1216 (Fla. 3d DCA 2011); *Collier v. Bohnet*, 966 So. 2d 1033, 1035 (Fla. 4th DCA 2007); *Josephthal Lyon & Ross, Inc. v. Durham*, 734 So. 2d 487, 489 (Fla. 5th DCA 1999).

[DE 195], yet Crum & Forster now conveniently believes that its litigation guidelines are no longer applicable and seeks reimbursement for fees and costs which are expressly prohibited by Crum & Forster.  For example, the litigation guidelines require that the bill enumerate "the initials of the person providing the service" with "the full name of each attorney/paralegal," yet Crum & Forster has not done so on each entry.  Crum & Forster also violates its own litigation guidelines by failing "separately state[]" "each activity…"  This Court has declared that "the failure … to comply with the Defense Agreement [i.e., litigation guidelines] relieves … any obligation … in the payment of … costs and fees."  [DE 195 at 16].  Therefore, based on this Court's ruling, Crum & Forster cannot recover any costs or fees.

Accordingly, the Court should deny Crum & Forster's Motion because Hartford has not had a meaningful opportunity to examine the terms of Crum & Forster's fee agreement with its counsel.

### B. Crum & Forster has failed to carry its evidentiary burden due to its failure to file unredacted copies of its billing records.

In the instant action, Hartford sought reimbursement of attorneys' fees and costs from Crum & Forster that Hartford incurred defending Miller & Solomon General Contractors, Inc. ("Miller & Solomon") in underlying litigation wherein a performance bond obligee sued Miller & Solomon and Hartford, based upon Miller & Solomon's general contracting work in the construction of a structure and based upon Hartford's issuance a performance bond enumerating Miller & Solomon as the bond principal.  [DE 39].  Specifically, Hartford asserted that (as Miller & Solomon's equitable subrogee) Hartford could recover the defense benefits under a "duty to defend" found within a commercial general liability insurance policy issued by Crum & Forster identifying Miller & Solomon as the insured.  [DE 39].

Crum & Forster's dissatisfaction with Hartford's assertion of both the attorney-client and work-product evidentiary privileges in response to production requests that Crum & Forster propounded upon Hartford (wherein Crum & Forster explicitly elicited documents falling within the purview of said privileges) resulted in Crum & Forster moving to compel Hartford to disclose all privileged information based upon the fact that, as successfully argued by Crum & Forster, a party requesting recovery of attorney fees and costs cannot assert the attorney-client or work-product privileges because the privileges are "rendered moot by the at-issue doctrine." [DE 59 at 15].

In this action, Crum & Forster repeatedly represented to this Court that Hartford could not assert "any privilege" as to evidence pertaining to the attorneys' fees and costs sought to be recovered, in that by requesting attorneys' fees and costs, Hartford injected an issue into the litigation requiring disclosure of the privileged information. [DE 59 at 13].[4]

On February 3, 2012, this Court overruled Hartford's attorneys-client and work-product privileges by virtue of Crum & Forster's argument of "issue-injection." [DE 95]. Audaciously, Crum & Forster's Motion for Attorneys' Fees attaches exhibits that contain redacted documents. [DE 209]. Crum & Forster's Motion for Attorneys' Fees implicitly asserts an evidentiary privilege in that it annexes redacted documents, [DE 209], yet even Crum & Forster admits that Crum & Forster's "privilege objection is rendered moot by the at-issue doctrine," as Crum & Forster successfully argued to this Court. [DE 59 at 13; DE 95 at ¶ 5]. As articulated by Crum & Forster, Crum & Forster has waived its evidentiary privileges by virtue of Crum & Forster filing it Motion for Attorneys' Fees.

Unless and until Crum & Forster files its unredacted billing records, Crum & Forster's Motion should be denied for Crum & Forster's failure to meet its evidentiary burden.[5]

### C. Crum & Forster's descriptions of the tasks done by legal assistants do not identify the legal assistant by name or the qualification/experience thereof as to each task by each legal assistant, and as such Hartford cannot determine whether the legal assistant hourly rate and the time expended are reasonable.

Crum & Forster's Motion seeks fees for the labor assumedly performed by four different legal assistants [DE 209 at 5-6], yet Crum & Forster's fee bills, which purport to provide a

---

[4] Crum & Forster primarily relied [DE 59 at 5-6] upon the following jurisprudence: *Cox v. Adm'r. U.S. Steele & Carnegie*, 17 F. 3d 1386, 1417 (11th Cir. 1994) (issue injection results in privilege waiver); *Ideal Elec. Sec. Co., Inc. v. Int'l. Fid. Ins. Co.*, 129 F. 3d 143, 152 (privilege waiver "with respect to the redacted portions of the [attorney] billing statements and any other communications going to reasonableness of the amounts of the fee award"); *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, No. 6:04-cv-1838-Orl-22JGG , 2007 WL 700851 (M.D. Fla. Mar. 1, 2007) (court applying at-issue doctrine held that party waived right to assert attorney-client privilege by asserting claim for attorneys' fees); *Tokraz v. TRG Columbus Dev. Venture, Ltd.*, No. 08-60190-CIV, 2008 WL 3850692 (S.D. Fla. Aug. 14, 2008) (attorney retainer agreement discoverable when requesting recovery of attorneys' fees); *Calderon v. Reederei Claus-Peter Offen GmbH & Co.*, No. 07-61022-CIV, 2008 WL 4194810, * 2 (S.D. Fla. Sept. 11, 2008) ("The privilege, however, protects only disclosure of confidential communications; it does not protect the disclosure of underlying facts").

[5] Crum & Forster has forwarded unredacted invoices to Hartford, but Crum & Forster has failed to file same with the Court, thereby impeding the Court's ability to evaluate the unredacted invoices.

description of the tasks done, do not specifically identify the legal assistant presumably performing the tasks until May 1, 2012.  Until May 1, 2012, Crum & Forster's fee bills only generically enumerate "legal assistant" as the timekeeper and do not identify the specific legal assistant.  Conversely, the professional experiences and academic qualifications of Crum & Forster's legal assistant's run the gamut.  [DE 209-6 at 12-13].  For example, one legal assistant has a Bachelor's degree from the University of Florida and over twenty years of experience, another has passed a high school equivalency exam and has five years of experience, and another has an Associate's degree and only two years of experience.  [DE 209-6 at 12-13].  Presently, Crum & Forster seeks recovery of 754 hours for labor performed by, generically "LA" or legal assistant, at a rate of $85, totaling $64,090.00.

Accordingly, Hartford submits that the Court should deny Crum & Forster's Motion, but if the Court awards Crum & Forster any fees, then the Court should define the reasonable hourly rate of Crum & Forster's legal assistants for bills predating May 1, 2012 to be that of an individual with an Associate's degree and two years of experience or an individual with a high school equivalency diploma and five years of experience.  *See Duckwork v. Whisenant*, 97 F. 3d 1393, 1399 (11th Cir. 1996) ("Because there is no evidence regarding the paralegals' expertise in a civil rights case, the court finds that compensation at the lowest rate for paralegals outlined by Mr. Weathersby, $45 per hour, is an appropriate fee").  Hartford submits that a reasonably hourly rate for an individual with a high school equivalency diploma and five years of experience is $15.00.  The total amount of hours charged aggregate by all of Crum & Forester's legal assistants as "LA" is 754 hours.  Thus, although Hartford submits that Crum & Forster is not entitled to any recovery, should the Court award fees for the time of "LA" without a reduction for the unreasonable number of hours expended, Hartford submits that the appropriate amount is: $11,310.00.

### D. Crum & Forster improperly annexes to its Motion time entries predating its proposal for settlement to Hartford and Crum & Forster has no substantive right to seek entitlement to any such fee or cost.

Florida's offer of judgment statute is specifically limited to recovery "from the date of filing of the offer," Fla. Stat. § 768.79(1), yet Crum & Forster improperly annexes to its Motion time-entries predating Crum & Forster's proposal for settlement, which total the amount of $255.00.  Although Hartford submits that Crum & Forster has no right whatsoever to fees under the offer of judgment statute, as discussed *supra*, to the extent that Crum & Forster's Motion

seeks fees and costs that predate the proposal, then the Motion also exceeds the purview of the statute for that reason, and the requested relief should be denied.

**III.    If the Court finds that Crum & Forster's proposal for settlement is not invalid, then the Court should limit Crum & Forster's recovery.**

        **A.  Standard of review.**

        Under both Florida and Eleventh Circuit precedent, the lodestar method governs the process for determining attorneys' fees.  *See Golf Clubs Away, LLC v. Hostway Corp.*, No. 11-62326-CIV, 2012 WL 2912709, * 2 (S.D. Fla. July 16, 2012).  "The starting point in fashioning an award of attorneys' fees is to multiply the number of hours reasonably expended by a reasonable hourly rate."  *Loranger v. Stierheim*, 10 F. 3d 776, 781 (11th Cir. 1994).  "The first step in the computation of the lodestar is determining the reasonable hourly rate."  *Loranger*, 10 F. 3d at 781.  "A reasonably hourly rate is the prevailing market rate by lawyers of comparable skills, experience, and reputation."  *Id*.  In arriving at this figure, the court may consider the following twelve factors: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the degree of skill necessary to serve the client properly, (4) the attorney's inability to accept other employment because he accepted the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount of damages involved and the relief or results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the attorney's professional relationship with the client, and (12) awards in similar cases.  *See Schafler v. Fairway Park Condo. Ass'n.*, 147 Fed. Appx. 113, 115 (11th Cir. 2005).  Next, the court takes the reasonable hourly rate and multiplies it by the "reasonable number of compensable hours."  *Schafler*, 147 Fed. Appx. at 115.

        Additionally, the Florida Legislature requires consideration of the six variables set forth in Section 768.79(7)(b) of the Florida Statutes "[w]hen determining the reasonableness of an award of attorneys' fees pursuant to [said] section…."  Fla. Stat. § 768.79(7)(b).  Those variables are: (1) the then apparent merit or lack of merit in the claim; (2) the number and nature of offers made by the parties; (3) the closeness of questions of fact and law at issue; (4) whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer; (5) whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties; and (6) the amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if

the litigation should be prolonged.  *See* Fla. Stat. § 768.79(7)(b).  While said statute creates a presumption that a plaintiff has unreasonably rejected an offer of if the judgment rendered is at least twenty-five percent less than the offer rejected, by its terms, however, the presumption is not absolute and the trial court is "required" by the statute to consider "all of the relevant circumstances at the time of the rejection."  *Gray v. Bradbury*, 668 So. 2d 296, 297 (Fla. 1st DCA 1996).  "A losing plaintiff can overcome the presumption of unreasonable rejection."  *Gray*, 668 So. 2d at 297.  "Express findings supporting the unreasonable rejection conclusion are a prerequisite to meaningful appellate of such fee awards."  *Id.*

The party seeking fees bears the burden of establishing entitlement to the fees, and documenting hours and reasonable rates.  *See Norman v. Housing Auth. of the City of Montgomery*, 836 F. 2d 1292, 1303 (11th Cir. 1988).[6]  The party moving for fees also bears the burden of establishing the "reasonableness" of the hourly rate and number of hours expended via specific evidence supporting the hours and rates claimed."  *Chacon v. El Milagro Care Ctr., Inc.*, No. 07-22835-CIV, 2010 WL 3023833, * 2 (S.D. Fla. July 29, 2010).  "[C]lear and convincing evidence [establishing] the time and effort claimed and show[ing] that the time expended was necessary to achieve the results obtained" has been articulated as the evidentiary threshold.  *Hensley*, 461 U.S. at 441 (Burger, J. concurring).

"When a request for attorneys' fees is unreasonably high, the court may 'conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut.'"  *Chacon*, 2010 WL 3023833 at * 2.

### B. Crum & Forster improperly seeks recovery of an unreasonable number of hours.

i.  Crum & Forster engaged in needless discovery regarding the underlying lawsuit.

The Court should not award Crum & Forster attorneys' fees for the time needlessly spent engaging in irrelevant discovery.  For example, Crum & Forster unnecessarily inspected thousands of pages of documents at a warehouse and conducted needless depositions.

---

[6] "[F]ee counsel bears the burden in the first instance of supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate."  *Norman*, 836 F. 2d at 1303.  "Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."  *Id.*  "A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case."  *Id.*

At the Court's December 19, 2011 hearing, even the Court noted the futility of the discovery Crum & Forster sought:

12 [THE COURT:] And by the way, what is the need to take fact
13 discovery? Is there any dispute about the dates or anything
14 about the fraud in the contract, maybe that Miller and Solomon
15 misrepresented? None of that. It's just simply what do the
16 contracts say.

* * *

6 THE COURT: I am not purporting or attempting to
7 decide that today, or have you argue it today, but it's a
8 straightforward issue of law. What could we -- if you took the
9 depositions, what would you take them on? What would you say?
10 Would you say, "Is this your signature? Are these the dates?"
11 What would you say?

12 MR. GORDON: I think it goes a little beyond that,
13 Your Honor.
14 First of all, we asserted numerous defenses in
15 response to Hartford's complaint, one of them being that
16 Hartford has no right to recover as the subrogor of Solomon
17 because they volunteered. Hartford had no legal duty to
18 defend.

19 THE COURT: Any doubt about the fact that they did
20 defend? Any doubt about the fact that somebody wrote a letter,
21 the date is in here, asking some other insurance companies,
22 maybe yours, maybe Mr. Dunn's, to join in? Some of you did or
23 one of you did, I believe yours did, with the reservation of
24 any rights. It's all right there. What factual issue would
25 you develop?

1 MR. GORDON: The issue is whether or not they had a
2 legal duty to defend.

3 THE COURT: That's a legal issue. What factual,
4 factual, issue?

5 MR. GORDON: We need to get the pertinent contracts
6 from Hartford, the performance bond.

7 THE COURT: In a year, you haven't gotten one? Why
8 don't you ask them today to give you a copy.

9 MR. GORDON: We will. The other issue --

10 THE COURT: Mr. Taylor, can you get them a copy of the
11 contract?

12 MR. TAYLOR: Absolutely, they have gotten copies.
13 They've been monitoring the litigation since day one.

12

14 THE COURT: If you have got a copy, don't waste
15 everybody's time with asking for another copy.
16 We are getting back to the factual issues. You need
17 depositions to get some facts.

18 MR. GORDON: Right. The other witnesses we wanted to
19 depose, Judge, are witnesses who are experts in the underlying
20 case to establish that the claims in the underlining case were
21 not covered under the policy.

* * *

17 MR. GORDON: Not legal experts. These are people that
18 were involved as, quote unquote, construction experts in the
19 underlying case who will testify regarding the claimed
20 deficiencies in the underlying construction project.

21 THE COURT: Would they be telling me facts about
22 whether or not it was a crane that was lifting a load of steel,
23 for example, or would they be telling me about, well, they read
24 this claim and they decided it wasn't appropriate and here is
25 why? It's the latter, isn't it?

1 MR. GORDON: I believe they would be testifying
2 regarding whether or not there was so-called property damage
3 when it occurred. That issue is relevant and germaine to
4 whether occurred after the Crum and Forster policy --

5 THE COURT: Doesn't the claim that was filed tell us,
6 clearly, whether it was property damage or not? If the claim
7 is there, if it's a claim for reimbursement for a crane that
8 fell over and $300,000 damage because of a hurricane or
9 something, or if it's a claim by the owner of the building that
10 the ballroom chandeliers weren't hung properly. You see, isn't
11 that facts? The claim itself, whatever the claim is, but why
12 -- your position is that your coverage was all excluded. None
13 of it was for faulty work.

14 MR. GORDON: Correct.

15 THE COURT: So if we look at the claim and it's for
16 faulty installation of the electrical conduits on the 38th
17 floor that had to be ripped out and put in, then we check it
18 out. Why do we need an expert to tell me about that?

* * *

12 MR. GORDON: Another thing, Judge, another defense
13 that we have is that Hartford should not be entitled to any
14 recovery against my client because, when we issued our
15 reservation of rights letter, we told Hartford, "You need to
16 comply with Crum and Forster's litigation guidelines." They
17 agreed to do that. It's our position that they failed to
18 comply with the guidelines. They did no reporting. The

19 guidelines say what they say. They say, "You need to do X, Y,
20 and Z." It's our position they did do that.

21 THE COURT: You need a witness to tell me that they
22 didn't do X, Y, and Z? You introduce the guidelines into
23 evidence. They are agreed to.

24 MR. GORDON: I understand. I just want to get their
25 people deposed.

1 THE COURT: On what? If they agree, as you say, that
2 you told them in your reservation of rights you're going to
3 rely on this, then they said fine. What do you need a witness
4 for? Can't I accept that paperwork? There is no dispute over
5 that.
6 Forgive me, I said I wouldn't interrupt you. Do you
7 have anything else about who you want to bring and why?

[DE 89-1 at 10-16].

Hartford respectfully submits that when this Court conducts the second step of the lodestar methodology, the Court should exclude all time spent on needless discovery pertaining to the underlying lawsuit.   As set forth in the spreadsheet attached hereto as Exhibit "A," Hartford calculates the total amount for this labor to be $30,057.50.

      ii.    <u>All the time spent by Crum & Forster with regard to its didactic jurisprudential expert John Bond Atkinson, Esq. is unreasonable and should be excluded given the Court's exclusion of said opinion testimony.</u>

When the Court tabulates the reasonable number of compensable hours, the Court should exclude the time relating to Crum & Forster's paternalistic legal expert, which this court excluded from trial, even after Crum & Forster moved for reconsideration.  [DE 96; DE 165].  At the Court's December 19, 2011 hearing, the Court and Crum & Forster's legal counsel engaged in the following colloquy:

22 THE COURT: You want to bring legal experts in to tell
23 a federal Judge what the law is; is that what you want to do?
24 Isn't that precluded by the Daubert case and everything else
25 that we all know about?
1 I rely on the lawyers to tell me what the law is. I
2 rely on you very heavily, Mr. Dunn very heavily, Mr. Taylor,
3 and then, of course, I read the cases that you present to me.
4 You do that legal research. I rely on you to tell me what
5 law is. I don't need a law professor or a, quote, insurance
6 expert from New York or some place to come tell me what the
7 Florida statute says or the federal statute says or the bond
8 says.

14

9 You haven't asked for a Daubert hearing. You see
10 where we are? We are playing it out where we can mess around
11 for another two or three years. Not that you're doing it
12 deliberately. Factually, that's where we would end up if I let
13 the lawyers just go play it out and bring in experts to tell me
14 what the law is.
15 Well, I interrupted you. So you would be bringing in
16 experts. What else?
* * *
19 In any event, we haven't dealt with any Daubert
20 hearings, any Daubert motions, anything like that.

21 MR. GORDON: I am not sure a Daubert hearing would be
22 necessary in this case.

23 THE COURT: I think it would be if you are going to
24 bring in people to tell me the law, as lawyers are doing almost
25 every day in almost every one of these cases. Consistent with
1 my interpretation of Daubert, eighty-nine percent of them are
2 denied.
3 I had a four-hour hearing the other day just for fun
4 to see what the lawyers would bring in on Daubert. I couldn't
5 see anything. I said come on in. They came in with, really, a
6 fine gentleman from New York that had done ERISA-type insurance
7 retirement policies for thirty years. He had thought up a very
8 good way that a fiduciary in ERISA should act. It wasn't
9 supported by any cases. He never wrote a book on it. He just
10 came up with a theory.
11 Oh, well, I am rambling. I'll let you go on.

[DE 89-1 at 12-15].

Notwithstanding the foregoing colloquy wherein Crum & Forster represented to the Court that it would proffer no opinion testimony from a legal expert, Crum & Forster sought to have John Bond Atkinson, Esq. instruct Judge King on domestic law in the State of Florida.  [DE 89; DE 130].  When granting on February 9, 2012, Hartford's Motion *in Limine* [DE 96], the Court made three dispositive statements:

a. "Mr. Atkinson has no scientific, technical or other specialized knowledge which will assist this Court in understanding the evidence or determining a fact in issue." [DE 96 at 2].

b. "The evidence that Defendant Crum & Forster proposes to establish through its expert is not the type of evidence which can be established through expert testimony." [DE 96 at 2-3].

c. "Having reviewed the entirety of Mr. Atkinson's Expert Report, the Court finds that it does not require Mr. Atkinson's testimony to understand whether Miller & Solomon, Hartford, and Carlton Fields complied with the Crum & Forster litigation guidelines." [DE 96 at 3].

Given the Court's categorical exclusion of the paternalistically didactic opinion testimony of John Bon Atkinson, Esq. [DE 96; DE 165], the time Crum & Forster spent pertaining to John Bond Atkinson, Esq. is unreasonable and should be excluded from the Court's calculation of the reasonable number of compensable hours. As set forth in the spreadsheet attached hereto as Exhibit "A," Hartford calculates the total amount for this labor to be $16,388.50.

   iii.  <u>Crum & Forster improperly seeks recovery of clerical and secretarial work.</u>

This Court does not award attorneys' fees for secretarial tasks. *See, for example, Pollock v. Syndicated Office Systems, Inc.*, No. 09-60813-CIV, 2010 WL 3282580, * 3 (S.D. Fla. Aug. 19, 2010). *See also* Fla. Stat. § 57.104 (limiting recovery of legal assistant time to nonclerical work). Numerous time entries by Crum & Forster's legal assistants are for secretarial tasks. The Court should exclude this time from the reasonable number of compensable hours. As set forth in the spreadsheet attached hereto as Exhibit "A," Hartford calculates the total amount for this labor to be $67,404.03.

   iv.  <u>Crum & Forster's legal assistants generally and also Michael C. Gordon, Esq. specifically (with regard to Crum & Forster's stricken legal expert John Bond Atkinson, Esq.) have duplicative, redundant, excessive and unnecessary time entries.</u>

Duplicative, redundant, excessive, and unnecessary time entries are not compensable. *See Hepsen v. J.C. Christensen & Assoc., Inc.*, 394 Fed. Appx. 597, 600 (11th Cir. 2010). Crum & Forster's legal assistants generally have excessive and unnecessary time entries. Michael Gordon, Esq. has excessive and unnecessary time entries with regard to seeking reconsideration of the Court's exclusion of John Bond Atkinson, Esq. as an expert. Hartford respectfully submits these time entries should be excluded from the reasonable number of compensable hours. As set forth in the spreadsheet attached hereto as Exhibit "A," Hartford calculates the total amount for this labor to be $4,244.50.

   v.  <u>Crum & Forster's legal assistants' time entries do not reflect that their work was performed under supervision of an attorney and that compensation is sought for work that is not recoverable.</u>

Certain enumerated legal assistant tasks are recoverable when performed under the supervision of an attorney.  *See* Fla. Stat. § 57.104.  Yet, the time entries of Crum & Forster's legal assistants do not reflect that only the recoverable tasks within the statute were performed and the entries do not reflect that the work was performed under the supervision fo attorney.  Accordingly, the time is not recoverable.

vi.   Crum & Forster improperly seeks recovery of travel time.

Crum & Forster improperly seeks recovery of attorneys' fees for travel time.  Undersigned counsel could find no case law interpreting Sections 57.041 and 768.79 of the Florida Statutes or 28 U.S.C. § 1920 to authorize an award of fees or costs for travel time.  Even Crum & Forster's litigation guidelines limit recovery of time traveling: "Time for travel up to one hour in duration each way can be billed.  Passive travel time in excess of one hour each way is not billable unless counsel can demonstrate that work could not have been performed during the trip."  The Court should exclude such time from the reasonable number of compensable hours.  As set forth in the spreadsheet attached hereto as Exhibit "A," Hartford calculates the total amount for this labor to be $3,307.50.

**C.  The Court should apply an across-the-board percentage reduction of fifty percent.**

"Where fee documentation is voluminous … an hour-by-hour review is simply impractical and a waste of judicial resources."  *Loranger*, 10 F. 3d at 783.  "This approach does not relieve district courts of the requirement to concisely but clearly articulate their reasons for selecting specific percentage reductions."  *Id*.  The Eleventh Circuit has precisely held that "where the fee motion and supporting documents are so voluminous, it is sufficient for the court to provide a concise but clear explanation of its reasons for the reduction."  *Id*.  If the Court finds that Crum & Forster's proposal for settlement is valid and if the Court finds that Crum & Forster's billing records are too voluminous, then Hartford requests that the Court apply, across-the-board, a reduction of fifty percent.

**D.  Hartford's objections to specific time entries.**

To the extent the Court finds that Crum & Forster's proposal for settlement is valid and to the extent the court declines to apply an across-the-board percentage reduction, Hartford's objections as to each time entry are set forth in the spreadsheet attached hereto as Exhibit "A." Hartford requests that the Court reduce the number of compensable hours based upon the objections set forth therein.

<u>MEMORANDUM OF LAW IN RESPONSE TO</u>
<u>CRUM & FORSTER'S MOTION FOR NON-TAXABLE EXPENSES AND COSTS</u>

I.    **<u>Under Section 768.79 of the Florida Statutes, a prevailing party in this Court</u>**
      **<u>cannot receive any costs beyond those recoverable under 28 U.S.C. § 1920.</u>**

      **A. Introduction.**

A prevailing party "can not receive any costs under Florida § 768.79 beyond those already awarded under [28 U.S.C.] § 1920." *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-cv-00595-T-24-TGW, 2010 WL 3062420, * 2 (M.D. Fla. Aug. 4, 2010). As explained below, Crum & Forster cannot recover any non-taxable expenses and costs requested in Crum & Forster's Motion because they are not compensable under 28 U.S.C. § 1920.

By way of background, in *Jones v. United Space Alliance, L.L.C.*, the Eleventh Circuit found the attorneys' fee provision within Florida's offer of judgment statute to be substantive law for *Erie* purposes. 934 F. 3d at 1309-10; *Erie Railroad Co. v. Thompkins*, 304 U.S. 64 (1938). In *Menchise v. Akerman Senterfitt*, the Eleventh Circuit held that the federal offer of judgment rule in Rule 68 of the Federal Rules of Civil Procedure did not preempt Florida Statute § 768.79. 532 F. 3d at 1152 ("[S]ection 768.79 and Rule 68 do not conflict").

"Both of these decisions rest on the well-settled principle that that the Legislature shifts attorneys' fees to accomplish substantive public policy goals." *Kearney*, 2010 WL 3062420 at * 1. "Statutes that shift attorney's fees change normal litigation risks and offer parties a financial incentive to vindicate certain rights." *Id.*

"Statutes that determine costs do not serve the same goals." *Id.* "Typically, costs such as fees for the Clerk and service of process pay for the ministerial functions of the courts." *Id.* "Courts, therefore, view costs as a procedural matter." *Id.* "But because of the distinctly different purposes of fee-shifting and cost-shifting statutes, the Court does not read *Jones* or *Menchise* to make the reference in § 768.79 to 'reasonable costs' substantive law." *Id.* at * 2. "The Eleventh Circuit in *Jones* or *Menchise* did not clearly state such a position, which would be contrary to the rule that a district court cannot tax costs not authorized by 18 U.S.C. § 1920." *Id., citing Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987).

"Federal courts can only tax costs outside 18 U.S.C. § 1920 where a statute 'explicitly' authorizes it to do so, or a court explicitly declares that the statute creates a substantive right to costs." *Kearney*, 2010 WL 3062420 at * 2. "The Eleventh Circuit made clear in *Kivi* that a state supreme court must clearly announce a holding that a statute creates a substantive right to costs."

*Id*.  "For good reason, the Eleventh Circuit takes an exacting approach to statutory interpretation of state statutes that would displace federal procedural laws under *Erie*."  *Id*.  "Congress passed § 1920 to impose uniform and 'rigid control on cost-shifting in federal costs."  *Id., quoting Crawford*, 482 U.S. at 437.   "If any mention of costs in a state statute could overcome Congress's will, then § 1920 would have no force."  *Kearney*, 2010 WL 3062420 at * 2. "Instead of creating a uniform system of costs in federal courts, hundreds of [state] statutes would poke holes in the fortress that Congress created with § 1920."  *Id*.

For this reason, the Court should deny Crum & Forster's request to tax the non-taxable expenses and costs.

### B.  Crum & Forster cannot recover its expert witness fees.

i.  <u>Crum & Forster's expert witness fees fall outside the purview of 28 U.S.C. § 1920</u>.

"The U.S. Supreme Court held in *Crawford Fitting Co.* that 'absent explicit statutory or contractual authorization for the taxation of expenses of a litigant's witnesses as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920."  *Kearney*, 2010 WL 3062420 at * 2, *citing Crawford Fitting Co.*, 482 U.S. at 445.  "Moreover, in *Kivi v. Nationwide Mutual Insurance Company*, the Eleventh Circuit wrote: 'Obviously, the entitlement to expert witness fees under the Florida Statutes is not a substantive right.'"  *Kearney*, 2010 WL 3062420 at * 2, *quoting Kivi*, 695 F. 2d 1285, 1289 (11th Cir. 1983).   "In *Kivi*, the Eleventh Circuit reversed a district court that taxed expert witness fees as costs under Florida Statute § 627.428, contrary to § 1920."  *Kearney*, 2010 WL 3062420 at * 2.

"Florida Statute § 768.79 does not 'explicitly' mention expert witness fees or court reporter costs."  *Id*.  28 U.S.C. § 1920 "only allows the taxation of expert witness fees for 'court appointed experts."  *Tesler v. Costa Crociere S.p.A.*, No. 08-60323-CIV, 2009 WL 1851091, * 3 n.3 (S.D. Fla. June 29, 2009).  Where the court did not appoint the expert, only the $40 per day authorized by 28 U.S.C. § 1821 can be recovered.  *Tesler*, 2009 WL 1851091 at * 3 n.3, *citing Morrison v. Reichhold Chem., Inc.*, 97 F. 3d 460, 463 (11th Cir. 1996).   Accordingly, the Court should deny Crum & Forster's request to tax $20,885.83 in expert fees because John Bond Atkinson, Esq. was not a court appointed expert.

ii.  <u>Even under Florida law, Crum & Forster cannot recover the fees paid to the domestic law expert John Bond Atkinson, Esq.</u>

First, the Florida Legislature has limited recovery of costs under the offer of judgment statute to "reasonable costs…."  Fla. Stat. § 768.79(1).  Crum & Forster's costs incurred compensating John Bond Atkinson, Esq. are not "reasonable costs" because the Court excluded the testimony.  [DE 96; DE 165].  Accordingly, taxation of these costs should be denied.

Second, Florida's judiciary has interpreted the offer of judgment statute to prohibit an award of nontaxable costs.  *See C & S Chem., Inc. v. McDougald*, 754 So. 2d 795 (Fla. 2d DCA 2000).  The Florida Supreme Court's Statewide Uniform Guidelines for Taxation of Costs in Civil Actions prohibits taxing as costs "Any Expenses Relating to Consulting But Non-Testifying Experts."  *In re Amendments to Uniform Guidelines For Taxation of Costs*, 915 So. 2d 612, 617 (Fla. 2005).  Judge King rendered John Bond Atkinson, Esq. a non-testifying expert by excluding his opinion testimony.  [DE 96; DE 165].

Accordingly, the Court should deny Crum & Forster's Motion.

### C.  Crum & Forster cannot recover its Westlaw and Pacer costs.

Crum & Forster cannot recover its Westlaw and Pacer costs.  *See Duckworth*, 97 F. 3d at 1399 ("costs such as … computerized legal research … and expert witness fees … are clearly nonrecoverable."); *Global Patent Holding, LLC v. Panthers BRHC LLC*, No. 08-80013, CIV, 2009 WL 1809983, * 2 (S.D. Fla. June 25, 2009) (prohibiting taxation of costs for "computerized legal research, PACER fees").  Accordingly, the Court should deny Crum & Forster's request.

### D.  Crum & Forster cannot recover its "background searches on various witnesses."

Crum & Forster has offered no legal authority to support its request to recover $522.75 for "background searches on various witnesses."  [DE 209 at 7].  The Court should deny Crum & Forster's request on that basis alone.  Moreover, 28 U.S.C. § 1920 does not authorize taxing such costs.  Accordingly, the Court should deny this expense.

### CONCLUSION

For the reasons set forth above, the Court should deny Crum & Forster's Verified Motion for Attorneys' Fees and Non-Taxable Expenses and Costs.

WHEREFORE, Plaintiff Hartford Accident and Indemnity Company respectfully requests entry of an order denying the Verified Motion for Attorneys' Fees and Non-Taxable Expenses and Costs filed by Defendant Crum & Forster Specialty Insurance Company and granting such other relief deemed just and proper.

Dated: August 31, 2012.

Respectfully submitted,

TAYLOR VEGA, P.A.
*Counsel for Plaintiff*
2555 Ponce De Leon Blvd., Suite 220
Coral Gables, Florida 33134
Tel: (305) 443-2043
Fax (305) 443-2048

By:     s/ Timothy S. Taylor
        TIMOTHY S. TAYLOR
        FLA. BAR NO.: 545015
        MIGUEL A. BRIZUELA
        Florida Bar No. 21465

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **August 31st, 2012**, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Timothy S. Taylor
TIMOTHY S. TAYLOR
Florida Bar No. 545015
MIGUEL A. BRIZUELA
Florida Bar No. 21465

21