UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:10-cv-24590-KING

HARTFORD ACCIDENT AND INDEMNITY
COMPANY, a foreign corporation, as equitable
subrogee and real party interest on behalf of
Miller & Solomon General Contractors, Inc.,

    Plaintiff,

vs.

CRUM & FORSTER SPECIALTY INSURANCE
COMPANY, a foreign corporation,

    Defendant.
_____

HARTFORD ACCIDENT AND INDEMNITY
COMPANY, a foreign corporation, as equitable
subrogee and real party in interest on behalf of
Miller & Solomon General Contractors, Inc.,

    Plaintiff,

vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, a foreign
corporation,

    Defendant.
_____/

## ORDER DENYING JOINT MOTION TO VACATE CERTAIN ORDERS AND FINAL JUDGMENTS

**THIS CAUSE** comes before the Court upon the parties' Joint Motion to Vacate Certain Orders and Final Judgments (DE 242). This is a closed case. On June 15, 2012, the Court granted the defendants' motions for summary judgment against Plaintiff, Hartford

Accident and Indemnity Company ("Hartford"), and entered final judgments accordingly. *See* DE 194–197. Hartford appealed. *See* DE 199 & 200.

While on appeal, the parties attended a mediation conference, as directed by the Eleventh Circuit,[1] but failed to reach an agreement. The Eleventh Circuit heard oral arguments and, more than one year later, *sua sponte* referred the parties to mediation again. In this second mediation, the parties reached a tentative settlement agreement—tentative because it "is expressly conditioned and contingent upon the issuance of a final, written order vacating" this Court's "Summary Judgments and the resulting Cost Orders . . . ." DE 242, at 3; *see* DE 242-2. But rather than seek vacatur in the appellate Court under 28 U.S.C. § 2106, the parties moved for it here under Federal Rule of Civil Procedure 60(b)(6).[2] Thereafter, the Eleventh Circuit granted the parties' "[j]oint motion to stay proceedings on appeal pending the District Court's decision on their joint motion to vacate certain orders." DE 244, at 2. For the reasons that follow, the Court denies the parties' motion.

## I. GOVERNING LEGAL STANDARDS

"As a general matter, the filing of a notice of appeal deprives the district court of jurisdiction over all issues involved in the appeal." *Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003). "However, it does not prevent the district court from taking action 'in furtherance of the appeal,'" which includes "that district courts retain jurisdiction after the

---

[1] This is according to the parties. They provided no record of this directive.

[2] If the parties had moved for vacatur in the Eleventh Circuit, that court would have been entitled to "remand the case with instructions that the district court consider the request, which it may do so pursuant to federal rule of Civil Procedure 60(b)." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994).

2

filing of a notice of appeal to entertain and deny a Rule 60(b) motion." *Id.* at 1179–80 (citation omitted). "However, following the filing of a notice of appeal district courts do not possess jurisdiction to *grant* a Rule 60(b) motion." *Id.* at 1180 (emphasis added).

> Accordingly, a district court presented with a Rule 60(b) motion after a notice of appeal has been filed should consider the motion and assess its merits. It may then deny the motion or indicate its belief that the arguments raised are meritorious. If the district court selects the latter course, the movant may then petition the court of appeals to remand the matter so as to confer jurisdiction on the district court to grant the motion.

*Id.* This procedure is codified in Federal Rule of Civil Procedure 62.1, Federal Rule of Appellate Procedure 12.1, and Eleventh Circuit Rule 12.1-1.

Under Rule 60(b)(6), "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for" "any . . . reason that justifies relief." The rule enables courts "'to vacate judgments whenever such action is appropriate to accomplish justice.' . . . Motions under the rule are directed to the sound discretion of the district court." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) (quoting *Klapprott v. United States,* 335 U.S. 601, 615 (1949)). Therefore, this Court must determine whether vacating its prior orders to fulfill a condition of the parties' tentative settlement on appeal is appropriate to accomplish justice.

## II.   ANALYSIS

### A. The *Bancorp* Decision

In *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 19 (1994), the Supreme Court considered "whether appellate courts in the federal system should vacate civil judgments of subordinate courts in cases that are settled after appeal is filed or certiorari

3

sought." In that case, Bonner Mall Partnership (the "Partnership") defaulted on its real estate taxes. *Id.* U.S. Bancorp Mortgage Co. ("Bancorp"), who had acquired a loan and mortgage secured by the real estate, scheduled a foreclosure sale. *Id.* The day before the sale, the Partnership petitioned for Chapter 11 bankruptcy. *Id.* Bancorp moved to suspend the automatic stay of its foreclosure, which motion the bankruptcy court granted. *Id.* at 20. The United States District Court for the District of Idaho reversed the bankruptcy court, and the United States Court of Appeals for the Ninth Circuit affirmed. *Id.* After the United States Supreme Court granted Bancorp's petition for a writ of certiorari, the parties stipulated to a consensual plan of reorganization, which the bankruptcy court approved. *Id.* The "confirmation of the plan constituted a settlement that mooted the case," but Bancorp was not completely satisfied. It asked the Supreme Court to vacate the judgment of the Court of Appeals pursuant to 28 U.S.C. § 2106.

The result was a unanimous opinion in which the Supreme Court strongly rejected the idea that "courts should vacate where mootness results from a settlement." *Id.* at 23. The Court reviewed and described its then-leading case on vacatur, *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950):

> We stated that "[t]he established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." . . . We "explained that vacatur "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance."

*Id.* at 22–23 (quoting *Munsingwear*, 340 U.S. at 39, 40). The Court then surveyed post-*Munsingwear* precedent, and concluded that "[t]he principles that have always been implicit

4

in our treatment of moot cases counsel against extending *Munsingwear* to settlement." *Id.* at 24. The Court reasoned that, in considering whether to grant vacatur based on mootness, "[t]he principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.*

> A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment. See *Hamburg–Amerikanische, supra,* 239 U.S., at 477–478, 36 S.Ct., at 216–217. The same is true when mootness results from unilateral action of the party who prevailed below. See *Walling,* 321 U.S., at 675, 64 S.Ct., at 828; *Heitmuller, supra,* 256 U.S., at 362, 41 S.Ct., at 523–524. **Where mootness results from settlement, however,** the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice.

*Id.* at 25 (emphasis added) (footnote omitted). The Supreme Court concluded that because the losing party below bears the burden of proving "equitable entitlement to the extraordinary remedy of vacatur," that party's "voluntary forfeiture of review constitutes a failure of equity that makes the burden decisive" against vacatur. *Id.* at 26.

In reaching its decision, the *Bancorp* Court also took account of the public interest. The Court first emphasized the presumptive correctness and value of judicial precedents to the legal community as a whole. *Id.* It then concluded that the public interest was best served by honoring the demands of orderly procedure—i.e. the ordinary appellate process—rather than by allowing "a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment." *Id.* at 27. The Court held that "mootness by reason of settlement does not justify vacatur of a judgment under review." *Id.* at 29.

Near the end of the *Bancorp* Opinion, however, the Court allowed for an undefined exception:

> This is not to say that vacatur can never be granted when mootness is produced in that fashion. As we have described, the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course. It should be clear from our discussion, however, that those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur—which neither diminishes the voluntariness of the abandonment of review nor alters any of the policy considerations we have discussed.

*Id.* This statement has left lower courts with the ambitious task of determining what circumstances are "exceptional" enough to countermand the presumptive value of precedent, the imperative to honor the demands of orderly procedure, and the failure of equity that ordinarily results from an appellant's voluntary forfeiture of review.

### B. Post-*Bancorp*, the Circuits Find "Exceptional Circumstances"

By allowing for the possibility of "exceptional circumstances," the Supreme Court did not completely close the door to vacatur based on mootness by reason of settlement. It left the door ajar, and some federal appellate courts have walked right through it. The parties urge this Court to follow the examples of two opinions from the First and Second Circuit Courts of Appeal.

The first opinion that the parties rely on is *Motta v. District Director of I.N.S.*, 61 F.3d 117 (1st Cir. 1995). There, in a habeas corpus action, the United States District Court for the District of Massachusetts "stayed [Motta's] deportation until the Board of Immigration Appeals ("BIA") could issue a decision on Motta's pending motion to reopen his deportation proceeding, and for ninety days thereafter to permit review of that decision, if necessary," by

6

the First Circuit. *Id.* at 118. The INS appealed the district court's ruling before the BIA issued a decision. *Id.* During oral argument, the First Circuit proposed that the parties settle, and directed counsel for both sides to discuss it with their clients. As a result, the parties agreed that the INS would grant Motta a temporary stay of deportation comparable to that granted him by the district court, on the condition that the district court's opinion, which the INS viewed as "a dangerous and erroneous precedent" were vacated. *Id.*

The First Circuit concluded that the controversy between the parties had ended, that the appeal was moot, and that the district court's opinion should be vacated. *Id.* The court took "pains to consider whether this appeal falls within the Supreme Court's prohibition against vacatur in" *Bancorp*. *Id.* The court concluded that "it does not" for two principal reasons. First, the appellate court, rather than the parties, initiated settlement discussions. Thus, "[a]s the INS has not initiated the relinquishment of its right to the remedy [of appeal], the same equitable calculus underlying *Bancorp* is not present." *Id.* The First Circuit's initiative also negated *Bancorp*'s concerns "about giving parties undue control over judicial precedents." *Id.* In that respect the court saw "no appreciable harm to the orderly functioning of the federal judicial system by vacating judgment." *Id.* Second, the First Circuit was persuaded that the "harm" worked "by depriving the public and the judicial system of the precedential value of the district court's opinion" should not "take priority over the parties' best interests." *Id.* It mattered to the court that "the INS, as a repeat player before the courts, is *primarily* concerned with the precedential effect of the decision below. If that decision stands, all possibility of a settlement is eliminated. If it is vacated, the appellee acquires the absolute certainty of not being deported, while the government saves the costs and risk of

7

litigation—a win for both sides." *Id.* The First Circuit concluded that "the equities plainly favor vacatur" based on mootness by reason of settlement. *Id.* at 118.

The second opinion that the parties rely on is *Major League Baseball Props., Inc. v. Pacific Trading Cards, Inc.*, 150 F.3d 149 (2d Cir. 1998). That case was a trademark dispute by Major League Baseball ("MLB") against Pacific Trading Cards, Inc. ("Pacific"), on the theory that Pacific was wrongfully manufacturing and distributing "trading cards that depicted major-league baseball players in MLB-trademarked uniforms." *Id.* at 150. The United States District Court for the Southern District of New York denied MLB's motion for a preliminary injunction. *Id.* MLB then moved in the Second Circuit for an injunction pending an appeal of the district court's order. *Id.* At oral argument, the Second Circuit expressed its "intention to grant MLB's motion unless Pacific posted a bond sufficient to secure MLB's claims." *Id.* at 150–51. The court also "suggested to the parties that they attempt to negotiate a settlement. To aid discussion," the court "assigned staff counsel to mediate the matter." *Id.* at 151. After discussions, the parties jointly reported that "they could settle the dispute but only if the district court's order and opinion were vacated." *Id.*

The Second Circuit obliged. It vacated the district court's order and opinion and dismissed MLB's motions as moot in light of the parties' settlement. The court followed the First Circuit's *Motta* decision, concluding that the principles expressed therein counseled in favor of vacatur. First, just like in *Motta*, "MLB 'did not by its own initiative relinquish its right to vacatur.'" *Id.* at 152 (quoting *Motta v. District Director of I.N.S.*, 61 F.3d 117, 118 (1st Cir. 1995).

8

> Rather, Pacific strongly desired a settlement to avoid the financial consequences of either posting the bond or not shipping the cards, the only options before it. Pacific could not test the merits of the favorable lower-court opinion without risking the severe financial consequences of our [the Second Circuit's] intended ruling on MLB's motion.
>
> MLB was agreeable to a settlement but needed a vacatur because, in the course of defending its marks, it, like the INS in *Motta,* had to be concerned about the effect of the district court's decision in future litigation with alleged infringers.

*Id.* The court concluded that, unlike in *Bancorp*, "the victor in the district court wanted a settlement as much as, or more than, the loser did. . . . The only damage to the public interest from such a vacatur would be that the validity of MLB's marks would be left to future litigation." *Id.* Therefore, "these facts met the 'exceptional circumstances' test of *Bancorp*." *Id.*[3]

The parties have not cited any instances of the Eleventh Circuit finding "exceptional circumstances" under *Bancorp*. This Court has found only one such instance, in a one-paragraph, per curiam, unpublished opinion. *See Blue Cross & Blue Shield Ass'n v. Cox*, 403 F. App'x 417 (11th Cir. 2010). The opinion's one footnote only hints at what the exceptional circumstances were: "Unexpected developments make it unlikely that full counseling would be available to the court if litigation continues in this case. The possible preclusive effect if

---

[3] The Second Circuit found "exceptional circumstances" in one other opinion that the parties cite, but the facts of that case are inapposite. *See Microsoft Corp. v. Bristol Tech., Inc.*, 250 F.3d 152, 155–56 (2d Cir. 2001) (vacating the district court's opinion based in part on a suspicion that the district court awarded punitive damages in contravention of the Seventh Amendment). *See also In re General Motors Corp.*, No. 94-2435, 1995 WL 940063, at *1 (4th Cir. Feb. 17, 1995) (finding "exceptional circumstances" where, among other things, a district court's order could, if left standing, result in the disclosure of privileged communications).

9

the case remains is undesirable under these circumstances." *Id.* at 417 n.1. The *Cox* opinion offers no guidance here.

The Court also notes that the Eleventh Circuit, sitting *en banc*, recently dismissed an appeal as moot due to settlement, which the parties achieved after briefing, oral argument, and a referral to mediation by the *en banc* panel. *Berry v. Orange Cnty.*, No. 13-14092, 2015 WL 2165892 (11th Cir. May 8, 2015). The court also remanded the case to the district court with instructions to vacate the judgment and dismiss the lawsuit. *Id.* The district court's opinion had been affirmed by the three-member panel decision that was vacated pending *en-banc* review. *See Berry v. Leslie*, 767 F.3d 1144 (11th Cir. 2014), *opinion vacated on reh'g en banc sub nom. Berry v. Orange Cnty.*, 771 F.3d 1316 (11th Cir. 2014). The *en banc* order of dismissal and remand does not mention *Bancorp*.

### C. The Instant Case

The parties contend that "exceptional circumstances" exist in this case, analogous to those found in the First and Second Circuits' *Motta* and *Major League Baseball* decisions, pursuant to which this Court ought to vacate certain judgments and orders to effect the parties' settlement. These are the proffered "exceptional circumstances": (1) the parties entered into settlement negotiations only upon the urging of the Eleventh Circuit, "but it is impossible for the Appellant to enter into any settlement that is not conditioned upon the decision on review being vacated based on potential harm the decision may cause the Appellant in future litigation;" and (2) "the district court's decision is on appeal and is based

on an interpretation of state law, thus having limited precedential value to the public." DE 242, at 8.[4]

The Court agrees that these circumstances are analogous to those found in the *Motta* and *Major League Baseball* decisions. The Court disagrees that they are sufficiently "exceptional" to escape *Bancorp*'s strong disfavor of vacatur based on mootness by reason of settlement.

First, this Court differs with the First and Second Circuits as to the parties' first proposed "exceptional circumstance." In *Bancorp*, the "principal condition" to which the Supreme Court looked was "whether the party seeking relief from the judgment below caused the mootness by voluntary action." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994). The Supreme Court reasoned that, as the losing party below bears the burden of proving "equitable entitlement to the extraordinary remedy of vacatur," that party's "voluntary forfeiture of review constitutes a failure of equity that makes the burden decisive" against vacatur. *Id.* at 26. In this Court's view, the fact that the parties entered into settlement negotiations only upon the urging of the appellate court, and the fact that the appellant here wants vacatur as much as the appellee (in order to effectuate settlement) in no way alters the voluntariness of appellant's forfeiture of appellate review. The parties may have discussed settlement only upon the insistence of the Eleventh Circuit, but the parties' inclusion of vacatur as a condition of their settlement was entirely their own prerogative.

---

[4] The facts of the underlying action—consolidated suits for declaratory relief and breach of contract—are set forth in this Court's two Orders of Final Summary Judgment (DE 194; DE 195). The specifics are not material to the parties' arguments for vacatur.

Having made that choice, appellant suffers from that "lack of equity of a litigant who has voluntarily abandoned review." *Id.* at 28.

Second, the Court is not persuaded by the parties' insistence that the comparatively limited precedential value of this Court's judgments—based on state law as they are—constitutes an "exceptional circumstance."[5] Although the *Bancorp* Court considered a motion to vacate the judgment of a court of appeals, the Court discussed the relevance of its holding "to motions at the court-of-appeals level for vacatur of district-court judgments." *Id.* The Court rejected some opinions' suggestions that "motions [for vacatur] at that level should be more freely granted, since district-court judgments are subject to review as of right," and are therefore "more likely to be overturned and presumptively less valid." *Id.* To this the Court "again assert[ed] the inappropriateness of disposing of cases, whose merits are beyond judicial power to consider, on the basis of judicial estimates regarding their merits." *Id.*

If it is inappropriate to dispose of cases, whose merits are beyond judicial power to consider, on the basis of judicial estimates regarding their merits, then how much more so is it inappropriate to dispose of cases, whose merits are beyond judicial power to consider, on the basis of judicial estimates regarding their value. This conclusion is particularly warranted in the face of *Bancorp*'s strong statement on the value of judicial precedents: "'Judicial precedents are **presumptively correct and valuable** to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.'" *Id.* at 26–27 (quoting *Izumi*

---

[5] In this respect the parties' argument is somewhat contradictory: they simultaneously argue that the orders and judgments they want vacated (1) are of negligible precedential value and (2) will, if not vacated, stand as onerous precedents, valuable to Plaintiff's future adversaries.

*Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)) (emphasis added).

It is upon consideration of this statement, and of the sound policy behind it, that this Court perceives a basic flaw in the *Motta* and *Major League Baseball* opinions. Those decisions in part turn on the courts' determinations that little or no harm would be worked by a vacatur. *See Motta v. District Director of I.N.S.*, 61 F.3d 117, 118 (1st Cir. 1995) ("We see no appreciable harm to the orderly functioning of the federal judicial system by vacating judgment."); *Major League Baseball Props., Inc. v. Pacific Trading Cards, Inc.*, 150 F.3d 149, 152 (2d Cir. 1998) ("The only damage to the public interest from such a vacatur would be that the validity of MLB's marks would be left to future litigation."). The parties' argument to this Court is similarly focused. *See* DE 242, at 14 ("the public's interest in the development of law would not be harmed by granting vacatur of the Orders because the legal issues presented therein can be addressed with more finality by Florida's state courts.").

However, this is the wrong focus. The *Bancorp* Court did not state that vacatur should be granted where doing so would work only a little harm, or none at all. Rather, the Court stated that vacatur should be granted only where the public interest would affirmatively "'be served by a vacatur.'" *See Bancorp*, 513 U.S. at 26–27 (quotation omitted); *cf. id.* at 27 ("we think . . . that the public interest **requires** those demands [of orderly procedure] to be honored when they can") (emphasis added). The parties' required showing under Rule 60(b)(6), pursuant to which they bring their instant motion, is also an affirmative one: the court may relieve a party from a final judgment or order for any reason "that justifies relief." It is not enough for the parties to show merely that a vacatur will not cause harm.

On that final note, this Court rejects the parties' low estimation of the harm that would result from the requested vacatur. *Bancorp* makes clear that a species of harm necessarily results from depriving the public and the legal community of judicial precedents, which are "'presumptively correct and valuable.'" *See Bancorp*, 513 U.S. at 26–27 (quotation omitted).[6] Under the ordinary circumstances of this case, the parties' desire to settle does not justify the extraordinary relief of vacatur.

### III.  CONCLUSION

Therefore, it is **ORDERED, ADJUDGED, and DECREED** that the parties' Joint Motion to Vacate Certain Orders and Final Judgments **(DE 242)** be, and the same is, hereby **DENIED.**

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 27th day of May, 2015.

*/s/ James Lawrence King*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:   All Counsel of Record

---

[6] The Court notes that its Final Summary Judgment Order in favor of Defendant Westchester Surplus Lines (DE 194) has been cited in WILLIAM SCHWARTZKOPF, PRACTICAL GUIDE TO CONSTRUCTION CONTRACT SURETY CLAIMS § 18.02 n.34 (Aspen Publishers 2015).

14